OPINION OF THE COURT
John T. Gallagher, J.
The defendant herein was indicted by a Queens Grand Jury on two counts of sodomy in the first degree and two counts of sexual abuse in the first degree.
A waiver of jury trial was executed and filed on March 3, 1987. The defendant was tried without a jury on the same day and the trial ended on March 4, 1987.
I
BACKGROUND
On or about October 15, 1985 Frank Morris, a patient in a Queens nursing home, was anally sodomized in his sixth floor private room. Mr. Morris was over 70 years of age and physically handicapped in that he is paralyzed on his right side. In addition, the patient is partially aphasic, being unable to speak in complete sentences and limited to saying a few words at a time.
As a result of an investigation, the State indicted the defendant in this action, Levie Herring, a licensed practical nurse, who worked in the hospital during the time of the crime.
II
EVIDENCE
The Attorney-General initially placed on the stand Mrs. Diana Gross, the director of nursing, who testified that the nursing home contains 320 beds on eight floors. There were three nursing shifts and the defendant was assigned to the 11:00 p.m. to 7:00 a.m. schedule. Normally, three employees were assigned to each floor, a licensed nurse and two aides.
On October 18, Mrs. Gross had a conversation with the *489 defendant. She told the defendant that Mr. Morris had been sexually abused on the 15th by a male during the early morning hours. She further stated that the assailant was a heavy set male black, who was short and stocky. This description fitted the defendant and, based on it, he was suspended from his position. No comment was made by the defendant when he heard this information.
On cross-examination, it was acknowledged that a second employee had also been suspended based on the victim’s description. In addition, it was admitted that there were four other black male nurses in the home.
The complainant next testified. This court examined him and found him competent to testify but his aphasic condition clearly limited his power to narrate. The patient stated that while he was asleep someone woke him up and would not go away. From that point, the witness simply repeated himself and had difficulty describing what next happened. Pencil and paper were given to him but his afflictions made it impossible for him to write.
Finally, the court permitted the use of two anatomically correct dolls to be used as an aid in giving testimony. Counsel objected on the grounds that CPL 60.44 does not authorize anyone over 16 years of age to utilize such an aid. The court overruled this objection.
Through the use of the dolls, the witness indicated that a man touched his genital area and used the word "sodomy” to indicate what happened to him.
The witness was not able to clearly describe what occurred in his room nor was he able to describe his assailant or give physical characteristics. He was equally vague as to the length of time the assault took place or the actual date. However, he clearly pointed to the defendant when asked to indicate who injured him.
Ill
THE ANATOMICAL DOLLS
An issue has been raised as to the use of the anatomical dolls in the present matter. Defendant contends that the clear language of CPL 60.44 bars the use of such evidence and its introduction was, therefore, prejudicial.
CPL 60.44 states: "Any person who is less than sixteen years old may in the discretion of the court and where helpful *490 and appropriate, use an anatomically correct doll in testifying in a criminal proceeding based upon conduct prohibited by article one hundred thirty, article two hundred sixty or section 255.25 of the penal law.” Defendant argues that since the patient is obviously over 16, this statute would bar the use of such dolls as an aid to testifying in the present case.
This court cannot agree with such reasoning. In the first place, the statute is not mandatory. It employs the term "may” and clearly leaves the use of such devices to "the discretion of the court”. Obviously then, the purpose of this section is to facilitate testimony in the designated cases. While the statute is clearly aimed at the young, its language does not bar its use by those over that age. The Practice Commentary by Peter Preiser points out that the " 'right to use and introduce properly authenticated maps, diagrams and models to illustrate and explain the testimony of witnesses is unquestioned’ ” (McKinney’s Cons Laws of NY, Book 11A, CPL 60.44 [1987 Pocket Part], at 282, citing Richardson, Evidence § 477 [Prince 10th ed]).
To the same effect, Fisch, New York Evidence § 141 (2d ed) states that: "[m]odels may be used in almost every case where there is 'movement and injury,’ and when fairly representative of the original object, models, sketches and diagrams are admissible to aid the jury in determining the character of the original, or manner in which the event occurred.”
The witness in this case suffered from an aphasic condition. While he was not mute, his vocabulary was limited and even with the aid of leading questions, he could only give a limited narration of the events of that night. Clearly, the dolls were helpful in explaining his testimony. Based on the above, this court finds no prejudice in their use and, hence, they were appropriate in this case.
IV
THE ELEMENTS OF THE CRIME
In evaluating the evidence presented in this case, this court finds ample proof that the complainant was anally sodomized and that he was physically helpless. Thus, the identity of the assailant becomes a key issue.
On the question of identity, four nursing home employees testified. None observed the defendant on the sixth floor at any time on the date of the crime. Thus, outside of the *491 victim’s own testimony, there is no direct evidence linking the defendant to the sixth floor on that evening. Under such circumstances, the testimony of the patient becomes vital.
In dealing with a "one witness” situation, the Court of Appeals had indicated that such testimony must receive "special scrutiny” (People v Regina, 19 NY2d 65, 69) for the purpose of determining competency, credibility and veracity.
The victim in this case is now 73 years of age and suffers from various physical disabilities. He is competent to testify but his aphasic condition limits the value of such testimony.
In considering all of the above, this court concludes that while the witness is truthful, there exists a strong possibility that he never had a good opportunity to view his attacker or, if he did, his identification was so brief that it might well have been erroneous.
Therefore, in evaluating the testimony of the patient, this court finds that such testimony, verbal and nonverbal, falls below the "special scrutiny” standards set forth in People v Regina (supra).
V
VERDICT
It is, therefore, the verdict of this court that the defendant is found not guilty of all four counts of the indictment.