820 P.2d 1226

**STATE of Idaho, Plaintiff–Appellant– Cross Respondent,**

v.

**James D. BEDARD, Defendant– Respondent–Cross Appellant.**

**No. 18613.**

Supreme Court of Idaho,
North Idaho, April 1991 Term.

Nov. 4, 1991.

---

Larry J. EchoHawk, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., argued, Boise, for plaintiff-appellant-cross respondent.

Dan J. Rude, Coeur d'Alene, for defendant-respondent-cross appellant.

BISTLINE, Justice.

On April 29, 1989, a jury convicted Bedard of reckless driving, eluding a police officer, and operation of a motor vehicle on a suspended license. Bedard appealed from all three convictions to the district court.

On appeal to the district court, appellant Bedard claimed that the State was required to prove, as an element of the offense of eluding a police officer, that the emergency lights or siren used by the police officer complied with the statutory specifications set forth in former Idaho Code § 49–606 [now 49–623]. The district court agreed with Bedard's contention and reversed his conviction for eluding a police officer. The district court upheld the other two convictions.

The State appeals the reversal of the eluding a police officer conviction, and Bedard cross-appeals from that part of the district court's order upholding the other two convictions.

On the afternoon of August 6, 1988, Deputy Gary Dagastine of the Kootenai County Sheriff's Department observed Bedard operating a "dirt bike" style motorcycle on Hidden Valley Road in Kootenai County. According to Deputy Dagastine, Hidden Valley Road is a winding and hilly dirt road with blind corners and cresting hills. Dagastine testified at trial that Bedard was operating the bike along Hidden Valley Road at speeds between fifty and sixty miles per hour while consistently riding on the wrong side of the road, turning blind corners, and cresting blind hills. Dagastine stated that, at one point, Bedard passed a pickup truck at a speed of approximately fifty to fifty-five miles per hour while approaching a hill crest.

Deputy Dagastine activated his vehicle's emergency equipment (wig-wag headlights, overhead blue lights, and siren) and pursued Bedard for approximately three miles. Officer Dagastine testified that during much of the pursuit he was within twenty feet of the bike and that on at least two occasions Bedard looked back at the officer.

Bedard turned onto Idaho Road, which is paved, and traveled about one mile before stopping. On two occasions, Bedard stopped his bike long enough for the officer to approach him, only to ride off as the officer drew near. After a third stop, Deputy Dagastine made contact with Bedard.

At the time of the occurrence, Bedard's driving privileges had been suspended due to a prior reckless driving conviction. Bedard successfully moved *in limine* to suppress at trial any evidence of his prior reckless driving conviction.

## I. ELUDING A POLICE OFFICER

 The State's sole issue on appeal is whether the State must prove, as an element of the offense of eluding a police officer, that the emergency lights or siren used by the police officer complied with the statutory specifications set forth in former Idaho Code § 49–606 [now 49–623]. Those specifications include an audible signal having a decibel rating of at least one hundred at a distance of ten feet, and/or a flashing light visible in a 360 degree arc at a distance of one thousand feet under normal atmospheric conditions.

The State claims that proof of compliance with the signal specifications of I.C. § 49–606 [now 49–623] is not an element of the offense of eluding an officer. Former I.C. § 49–1102 [now 49–1404] defines the offense:

> **Fleeing or attempting to elude a peace officer—Penalty.—** (1) Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop shall be guilty of a misdemeanor. The signal given by a peace officer may be emergency lights or siren.

In *State v. Monaghan,* 116 Idaho 972, 783 P.2d 311 (Ct.App.1989), the Court of Appeals held that before a conviction for failure to yield to an emergency vehicle may stand, the State must prove that the police vehicle's emergency equipment complied with the requirements set forth in I.C. § 49–606 [now 49–623]. The district court in the present case relied on *Monaghan* and concluded:

> Although *Monaghan* is factually distinct from the present matter, the analysis of the Court of Appeals is sufficiently broad to gain this Court's attention in this case. The Court's review of the record of this matter does not reveal any such proof of compliance by the State at trial. The eluding an officer conviction will be reversed.

R. 77A.

The State claims that the district court's reliance on *Monaghan* is misplaced because Monaghan was charged with failure to yield to an emergency vehicle, a violation of former Idaho Code § 49–645 [now 49–625], which specifically incorporates the requirements of I.C. § 49–606 [now 49–623]. Eluding an officer, as charged in the present case and set forth in I.C. § 49–1102 [now 49–1404], does not refer to I.C. § 49–606 [now 49–623] in any manner.

In *Monaghan,* the Court of Appeals determined that the statute defining failure to yield to an emergency vehicle was clear and unambiguous and must be read literally to incorporate the signal specifications of I.C. § 49–606 [now 49–623]. In the present case, the term used in I.C. § 49–1102 [now 49–1404], "visual or audible signal to bring the vehicle to a stop" which "may be emergency lights or siren," is vague and indefinite unless it is construed with the § 49–606 [now 49–623] requirements as well. Obviously, the waving of a flashlight or the honking of a horn would not suffice for a visual or audible signal to bring the vehicle to a stop.

For a driver to avoid being charged with either of the offenses of failure to yield to an emergency vehicle or eluding an officer, the driver must bring his or her vehicle to a stop when alerted by an emergency vehicle's visual or audible signal. In order to comply with these statutes, the driver must actually be able to see or hear the emergency vehicle's signal. Only by construing the term "visual or audible signal" with the § 49–606 [now 49–623] requirements for emergency lights and sirens can we conclude with a comfortable degree of certainty that a conviction for either of these offenses is just.

The State failed to prove that a proper visual or audible signal to stop was given and therefore the decision of the district court reversing the conviction for eluding an officer is affirmed.

## II. DRIVING ON A SUSPENDED LICENSE

 Bedard contends that his conviction for driving while suspended must be set aside because the offense was improperly charged. The State charged Bedard with

driving while suspended under former I.C. § 49–1532(a). That section provides:

Any person whose license or registration or nonresident's operating privileges has been suspended or revoked under this act and who during such suspension or revocation drives any motor vehicle upon any highway or knowingly permits any motor vehicle owned by such person to be operated by another upon any highway except as permitted by this act, shall be deemed guilty of a misdemeanor and be fined not more than $300 or imprisoned not exceeding 6 months, or both.

Under this section, one of the essential elements of the offense is that the suspension must have been made "under this act." The term "under this act" referred exclusively to former I.C. §§ 49–1501 through 49–1534.

Bedard contends that because his license was originally suspended for a violation of former I.C. § 49–330, not for a violation of I.C. §§ 49–1501 through 49–1534, the suspension was not made "under this act." However, the record establishes that Bedard's license would not have been suspended at the time of the present offense had he not failed to post proof of insurance as required by former I.C. § 49–1517 [now replaced and modified by 49–1208].

Therefore, Bedard's license was suspended under former I.C. § 49–1517, and the suspension is one that falls "under this act." The offense was properly charged and the conviction is affirmed.

### III. RECKLESS DRIVING

Former I.C. § 49–1103 [now 49–1401] defines the offense of reckless driving:

(a) **Reckless Driving.** Any person who drives ... carelessly and heedlessly or without due caution and circumspection, and at a speed or in a manner so as to endanger or be likely to endanger any person or property, or who passes when there is a line in his lane indicating a sight distance restriction, shall be guilty of reckless driving.

Bedard contends that the record in the present case does not conclusively establish that his driving speed exceeded the maximum speed limit for the area or that he endangered person or property.

A jury verdict will not be disturbed on appeal where there is substantial and competent evidence to support the verdict. *State v. Clayton,* 101 Idaho 15, 607 P.2d 1069 (1980). The jury was entitled to consider the officer's testimony that Bedard was operating his motorcycle at high speeds on the wrong side of the road while turning blind corners and cresting blind hills. The conviction for reckless driving is therefore affirmed.

JOHNSON and McDEVITT, JJ., concur. BAKES, C.J., and BOYLE, J., concur in Parts II and III.

BAKES, Chief Justice, dissenting:

I dissent to Part I, in which the majority holds, "The State failed to prove that a proper visual or audible signal to stop was given and therefore the decision of the district court reversing the conviction for eluding an officer is affirmed." *Ante* at 1228. The majority's conclusion that the State was required to show, as an element of the offense of eluding a police officer, that Deputy Dagastine gave "a proper visual or audible signal to stop," as defined by I.C. § 49–606 (now 49–623), is erroneous. I.C. § 49–1102 (now 49–1404), under which Bedard was charged and convicted of eluding a police officer, does not require such a showing.

The majority relies upon *State v. Monaghan,* 116 Idaho 972, 783 P.2d 311 (Ct.App. 1989), in support of its conclusion that the State was required to show that the lights and sirens on Deputy Dagastine's car met the requirements of I.C. § 49–606 (49–623). In *Monaghan,* the Court of Appeals held, regarding a different charge—failure to yield to an emergency vehicle—that the State must prove that the emergency vehicle's signalling equipment complied with the requirements set forth in I.C. § 49–606 (49–623). However, the statute defining the crime which was involved in *Monaghan*—failure to yield to an emergency vehicle in violation of I.C. § 49–645 (now 49–

625) [1]—specifically required all drivers to yield to an emergency vehicle whose audible or visible signals meet the requirements of § 49–606 (49–623). In this case, Bedard was charged with a different crime, eluding a police officer, in violation of I.C. § 49–1102 (49–1404),[2] which makes no such reference to the section 49–606 (49–623) requirements. Nothing in the language of I.C. § 49–1102 (49–1404) indicates that the signals used must comply with the requirements of section 49–606 (49–623). Therefore, the standard in these two statutes, I.C. § 49–645 (49–625) and I.C. § 49–1102 (49–1404), is different, and the majority errs in relying on *Monaghan*, having no basis for transposing the standard from one statute onto another. Had the legislature intended the requirements of I.C. § 49–606 (49–623) to apply to I.C. § 49–1102 (49–1404), it would have inserted language similar to that found in I.C. § 49–645 (49–625).

Furthermore, the language of each statute indicates that each was enacted to serve an entirely different purpose. I.C. § 49–645 (49–625) requires "the driver of every other vehicle" to yield to and *let pass* any emergency or police vehicle "making use of an audible or visible signal, meeting the requirements of section 49–623." Clearly, the visible or audible signals emitted by emergency vehicles must meet the standards of section 49–606 (49–623) so they will be loud enough and/or bright enough to warn all moving vehicles and pedestrians in the area that the emergency vehicle is approaching so they can move aside.

On the other hand, I.C. § 49–1102 (49–1404) does not, and need not, contain such a requirement because the officer is "pursuing" a particular driver who, as the title itself makes clear, is "wilfully eluding or attempting to flee" the police vehicle. While using signals which comply with the section 49–606 (49–623) requirements might be the most effective way to gain the driver's attention, and indeed, most officers certainly use such methods when pursuing a fleeing motorist,[3] it is completely unnecessary to engraft such a requirement onto the statute, especially since the legislature did not include the requirement in the first place. To "wilfully elude" a police officer, the State must prove beyond a reasonable doubt that the driver had actual knowledge that the officer is pursuing him and signalling him to stop, by whatever means (two of which "may be emergency lights or siren"). In this case, the State clearly proved that Bedard had actual knowledge that he was being pursued and signalled to stop. Whether those signals complied with the requirements of section 49–1102 (49–1404) is irrelevant because the signals, whatever type were used, were effective but ignored by Bedard.

The majority states, "Only by construing the term 'visual or audible signal' with the § 49–606 [now 49–623] requirements for emergency lights and sirens can we conclude with a comfortable degree of certainty that a conviction for either of these

---

1. **49–625. Operation of vehicles on approach of authorized emergency or police vehicles.**—(1) Upon the immediate approach of an authorized emergency or police vehicle making use of an audible or visible signal, meeting the requirements of section 49–623, Idaho Code, the driver of every other vehicle shall yield the right-of-way and immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the highway lawful for parking and clear of any intersection, and stop and remain in that position until the authorized emergency or police vehicle has passed, except when otherwise directed by a peace officer....

2. **49–1404. Fleeing or attempting to elude a peace officer—Penalty.**—(1) Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing police vehicle when given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a misdemeanor. The signal given by a peace officer may be emergency lights or siren....

3. In most cases, signals complying with section 49–606 (49–623) will be used because, if an officer is pursing a fleeing driver, most likely the officer will use audible or visual signals not only to signal the driver being pursued, but also to warn all other drivers and pedestrians to move aside. According to I.C. § 49–645 (49–625), signals to warn other drivers must comply with the section 49–606 (49–623) requirements, and therefore, those same signals, used to pursue the driver violating section 49–1102 (49–1404), will also comply with the 49–606 (49–623) requirements.

offenses is just." *Ante* at 1228. However, in terms of justice, the evidence is uncontroverted that Bedard was clearly aware that Deputy Dagastine was pursuing him and clearly signalling him to stop. As the majority pointed out, "[O]n at least two occasions Bedard looked back at the officer" and on two more occasions, "Bedard stopped his bike long enough for the officer to approach him, only to ride off as the officer drew near." *Ante* at 1227, 1228. Based upon this evidence, the jury found Bedard guilty of fleeing or attempting to elude a police officer. In light of these egregious facts, it is difficult to comprehend how the majority cannot "conclude with a comfortable degree of certainty" that Bedard's conviction is "just." To engraft a requirement not found in the statute, especially given the obvious facts of this case, is hardly "just." Bedard's conviction is clearly supported by the weight of the evidence and should be affirmed.

BOYLE, J., concurs.

BOYLE, Justice, dissenting.

The majority opinion follows the analysis of the district court by relying on the Court of Appeals case of *State v. Monaghan*, 116 Idaho 972, 783 P.2d 311 (Ct.App.1989). However, while I agree that *Monaghan* was correctly decided, the majority's reliance on that case is misplaced.

As the majority opinion states, *Monaghan* interpreted former I.C. § 49–645, which defined the criminal offense of "failure to yield to an emergency vehicle" by explicitly referring to the siren and emergency light specifications set forth in former I.C. § 49–606. Former Idaho Code § 49–645(1) stated:

Upon the immediate approach of an authorized emergency vehicle making use of an audible or visible signal, *meeting the requirements of section 49–606*, Idaho Code, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the nearest edge or curb of the roadway lawful for parking and clear of any intersection and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer. (emphasis added).

The Court of Appeals noted the importance of the statute's explicit reference to the siren and emergency specifications of former I.C. § 49–606 by stating:

To determine whether proof of compliance with statutory requirements is an element of the infraction of failure to yield to an emergency vehicle, we must determine whether the statutes are clear or ambiguous. If clear, "then we read the statute literally, neither adding nor taking away anything by judicial construction...." In our view the statutes are clear and unambiguous and must be read literally.

*Monaghan,* 116 Idaho at 974, 783 P.2d 311 (citations omitted).

In my view, that same analysis should apply in this case. However, as I read the literal words of the criminal statute at issue here, former I.C. § 49–1102(1), this statute does *not* require that the specifications of former I.C. § 49–606 be made an element of the crime of eluding a police officer. Former I.C. § 49–1102(1) states:

**Fleeing or attempting to elude a police officer—Penalty.**—(1) Any driver of a motor vehicle who wilfully flees or attempts to elude a pursuing police vehicle when given *a visual or audible signal to bring the vehicle to a stop*, shall be guilty of a misdemeanor. The signal given by a peace officer *may be emergency lights or siren.* (emphasis added).

Thus, former I.C. § 49–1102(1) does not explicitly require that the specifications of former I.C. § 49–606 be complied with as an element of the crime of eluding a peace officer as did the offense considered in *Monaghan.* Instead, I.C. § 49–1102(1) allows any "visual or audible signal." While the visual or audible signal requirement "may be [by] emergency lights or siren," the statute does not require emergency lights or signals of any kind and certainly does not make the signal requirements of I.C. § 49–606 an element of this offense.

In addition, the assertion of the majority opinion that "the waving of a flashlight or the honking of a horn" is not enough under former I.C. § 49–1102(1) is in error. If a peace officer yelled at a person at close range while on his police motorcycle or motioned to a person with his hand while driving beside him, to me this would meet the "visual or audible" requirement of the statute if it was clear that the intended person perceived and understood the meaning of the officer's signal. This is because the purpose of former I.C. § 49–1102(1) differs from the statute considered in *Monaghan*. The criminal offense of "failure to yield to an emergency vehicle" must meet the visual and audible signal requirements of former I.C. § 49–606 because the signal must be loud enough or bright enough to warn all moving vehicles and pedestrians that an emergency vehicle is approaching so they can move aside. In contrast, the offense of "fleeing or attempting to elude a police officer" contemplates only that a single offender be aware of the police officer's "visual or audible signal." Therefore, if the offender is aware of the signal it does not matter if the signal met the requirements of former I.C. § 49–606 or was by some other means including "the waving of a flashlight or the honking of a horn."

Accordingly, because the jury found Bedard guilty of the offense of attempting to elude a peace officer and as the facts indicate that Bedard saw the "visual or audible" signals from the police officer in this case, I would hold that the judgment of the district court on this issue be reversed and that the jury verdict finding the defendant guilty of attempting to elude a peace officer be reinstated.

BAKES, C.J., concurs.