879 P.2d 603

STATE of Idaho, Plaintiff–Respondent,

v.

Alan Howard DURST, Defendant–Appellant.

No. 20248.

Court of Appeals of Idaho.

July 19, 1994.

Petition for Review Denied Sept. 8, 1994.

Michael L. Henegen, Moscow, argued, for appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen. (argued), Boise, for respondent.

PER CURIAM.

A jury found Alan Durst guilty of raping a twenty-one year old female resident of his home whose mental impairment allegedly rendered her incapable of consenting to sexual intercourse. Durst's wife, the victim's personal care provider, presented testimony at trial that was damaging to Durst's defense. Also during trial, anatomically correct dolls were used by the victim and the prosecution to depict the alleged intercourse. On appeal, Durst raises three issues. First, he challenges the admission of his wife's testimony, arguing that the testimony was barred by rules of marital privilege and competence. Next, he contends that the use of the dolls was improper. Finally, he asserts that there was insufficient evidence, other than that obtained through the use of the dolls and the testimony of his wife, to sustain the guilty verdict. We find no error and affirm the judgment of conviction.

We turn first to the testimony of Durst's wife.[1] Her testimony involved a description of what she observed when she found Durst and the victim together at the time of the alleged rape. She related that on January 31, 1992, at about 10 o'clock in the evening, she noticed that the victim was not in her bedroom. She went downstairs into the living room to look for the victim and to remind her that it was bedtime. The only light in the living room came from the television; when she turned on the lights she found her husband with his back to her in a corner trying to put on his pants and partially cover himself with a blanket. The victim was sitting in the middle of the floor, naked from the waist down, looking "surprised and dumbfounded." In response to questioning by Durst's wife the victim told her that Durst had touched one of the victim's breasts, her stomach and her thighs. When asked if Durst had touched the private parts of her body, the victim replied "I don't know." The wife testified, "And I asked her if he put his penis inside of her and said—she said I didn't know and no." The wife also testified that Durst admitted touching the victim's breast and that the victim had touched his penis.

Although Durst initially claimed that his wife's testimony was privileged under I.R.E. 504, he abandoned that claim during a hearing on his motion in limine prior to trial. He now asserts only that his wife was not a competent witness under I.C. § 19-3002.

Durst's contention that the court erred in permitting his wife to testify against him is without merit. The basis for his argument is that the statute, I.C. § 19-3002, and not the Idaho Rules of Evidence, controls the admissibility of testimony by one spouse against the other in a criminal action.

■ However, during the pendency of this appeal, the Idaho Supreme Court definitively ruled on the question. In *State v. Martinez*, 125 Idaho 445, 872 P.2d 708 (1994), the court held that Rule 601 of the Idaho Rules of Evidence repealed I.C. § 19-3002 and removed any incompetency of a spouse to testify, subject to Rule 504 regarding confidential communications during marriage. Consequently, we hold that the district court did

1. Following the alleged rape and prior to the date of the trial, the Dursts were divorced.

not err in permitting Durst's wife to testify during the trial.

■ Next, Durst submits that the district court erred in allowing the prosecutor to use anatomically correct dolls while eliciting testimony from the victim. Durst's counsel objected to the use of the dolls, arguing that it must be shown that the victim was "incapable of otherwise communicating what had happened" before the dolls could be used. The district court disagreed, ruling:

> Well, in any event I'd have no problem with—obviously [the prosecutor] is having problems here because of—[the prosecutor] is having problems because the witness is having difficulty understanding his questions and if it's going to help to have a doll or visual aid to help her start going or help her explain herself to the jury. It's no different from a neurosurgeon with a model of a spine or a[n] accountant with a graph as far as I'm concerned.

The use of dolls, models, and other types of illustrative evidence is within the discretion of the trial court. The Minnesota Court of Appeals, in *State v. Eggert*, 358 N.W.2d 156 (Minn.Ct.App.1984), described the appropriate test for permitting the use of dolls by victims of sexual abuse. The court said:

> Appellant argues that the use of the dolls to demonstrate the victim's testimony was unnecessary because she was able to express her allegation in words, and cumulative because she was allowed to draw a picture of the alleged actions which were shown to the jury. Appellant's argument does not correctly state the true test of the use of testimonial aids. For instance, a doctor or engineer may be allowed to use artificial mockups of the human anatomy, cutaways, maps and diagrams, etc., even if the witness acknowledges that he does not *have* to have those things to testify. The test is whether or not the testimonial aid will likely assist the jury in understanding the witness's testimony.

358 N.W.2d at 161 (emphasis in original). *Accord, State v. Hood*, 18 Kan.App.2d 1, 846 P.2d 255 (1993). *See also* 1 MYERS, *Evidence in Child Abuse and Neglect Cases,* § 5.8, at 350–55 (1992).

Similarly, the North Carolina Supreme Court held in *State v. Fletcher*, 322 N.C. 415, 368 S.E.2d 633 (1988), that the practice of permitting children to use anatomical dolls during testimony is "wholly consistent with existing rules governing the use of photographs and other items to illustrate testimony. It conveys the information sought to be elicited, while it permits the child to use a more familiar item, thereby making [the witness] more comfortable." 368 S.E.2d at 637.

The above general principles, applied more commonly to child victims, also apply to cases in which the victim is mentally impaired. *People v. Herring*, 135 Misc.2d 487, 515 N.Y.S.2d 954 (1987). In the instant case, the dolls made it easier for the victim to testify.

The victim's testimony may be summarized as follows. She said she was sitting on a couch in the living room watching television with Durst. Durst took his pants off and threw them into a corner. He pulled her shorts down half way to her knees and rolled on top of her and was "pushing on it." About that time, Durst's wife came into the room. During this testimony the victim used the dolls to show what she and Durst were doing. On cross-examination, the victim testified, however, that Durst did not try to put his penis in her vagina.

■ Because of her mental disability, it was clearly difficult for the victim to relate what Durst had done to her; the dolls helped her explain those events and thus their use assisted the jury in understanding the victim's testimony. We conclude that the district court properly exercised its discretion in allowing the victim to use the dolls during her testimony. Before leaving this issue, we note that Durst poses one additional argument. He asserts that there was a lack of foundation as to the prosecutor's qualifications in using the anatomical dolls while questioning the victim. He cites no authority in support of this proposition; nor have we found any requirement in the law for an attorney to demonstrate his qualifications as a foundation for his use of testimonial aids. We therefore find Durst's argument in this respect to be without merit.

Finally, Durst argues that, without the testimony from his wife and the use of the dolls by the victim, there was insufficient evidence to sustain the jury's verdict of guilty. As we have held, the testimony of Durst's wife was properly admitted and there was no error in the use of the dolls. Nonetheless, Durst suggests the proof of penetration required for rape was insufficient.

Durst gave an explanation of the incident. He testified that he had consumed five beers and at least one mixed drink the evening of the events in question. He had removed his pants to get comfortable and was watching television in his underwear when the victim came into the room and started "roughhousing" with him. During the roughhousing he touched her breast. While he was on top of her, he discovered that she did not have any underpants on and that his underwear had slipped down so she was able to touch his penis. When he realized this, he got up to put on his pants and his wife came into the room. He denied attempting to have intercourse with the victim. Coupled with the victim's statement that no intercourse occurred, Durst challenges the sufficiency of the evidence to support the verdict.

The standard we apply, in reviewing a claim of insufficiency of the evidence to support a verdict, is whether there is substantial evidence upon which any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Bedard*, 120 Idaho 869, 820 P.2d 1226 (1991); *State v. Goerig*, 121 Idaho 108, 822 P.2d 1005 (Ct.App.1991). Furthermore, we will construe all facts and inferences to be drawn from those facts in favor of upholding the jury's verdict and, where there is competent, although conflicting, evidence to sustain the verdict, the appellate court will not reweigh the evidence or disturb the verdict. *State v. Peite*, 122 Idaho 809, 839 P.2d 1223 (Ct.App. 1992).

With respect to the element of sexual penetration questioned by Durst, the evidence showed that the victim was immediately taken by Durst's wife to a hospital for a medical examination, after Durst's wife discovered Durst and the victim in the darkened living room in Durst's house. The examining physician testified that he observed a "fair amount" of redness of the victim's vulva, fresh blood that was not menstrual blood and small tears at the bottom of the victim's vagina indicating the skin had been invaded. He testified that in his opinion, to a reasonable degree of medical certainty, the victim's injuries were caused by a forced entry of the vaginal area by penile penetration. This medical opinion was confirmed by the testimony of another doctor, a family practitioner with special training in child sexual abuse cases, who testified that from the data she reviewed the most reasonable conclusion was that the victim has been penetrated by a penis. Based upon the testimony received, a rational jury could find that the elements of rape had occurred. Accordingly, the jury's verdict in this case will be sustained.

Having reviewed the issues raised and concluding that no error has been shown, we affirm the judgment of conviction for rape.