**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41669**

| | | |
|---|---|---|
| **SHANE CRAWFORD,** | ) | **2014 Unpublished Opinion No. 870** |
| | ) | |
| **Plaintiffs-Appellants,** | ) | **Filed: December 17, 2014** |
| | ) | |
| **v.** | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Cheri C. Copsey, District Judge.

Judgment summarily dismissing petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent. John C. McKinney argued.

_____

MELANSON, Judge

Shane Crawford appeals from the district court's judgment summarily dismissing his petition for post-conviction relief in which he alleged ineffective assistance of trial and appellate counsel. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

A jury found Crawford guilty of two counts of lewd conduct with a minor child under the age of sixteen, I.C. § 18-1508.[1] The convictions were based on incidents involving two of

---

[1] Idaho Code Section 18-1508 provides, in pertinent part:

Any person who shall commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor child under the age of sixteen (16) years, including but not limited to, manual-genital conduct . . . when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party, shall be guilty of a felony . . . .

Crawford's daughters. The victim in Count I alleged that Crawford had fondled her breasts and touched her vagina. The victim in Count II alleged that, while he was in the kitchen with her, Crawford had asked her whether she knew what a clitoris was, approached her as she backed away, and touched outside of her vaginal area in an attempt to show her. During jury deliberations, the jury sent the following questions to the judge: "In order to have manual-genital contact, does it require touching the *vaginal* area? Does touching of the breast-area constitute manual-genital contact?" Crawford's counsel proposed that the district court answer "no," but the district court refused because it did not want to define what "manual-genital" meant. The state proposed that the district court direct the jury to reread the jury instructions, which the district court did. The jury returned a guilty verdict of both counts and Crawford was sentenced to concurrent unified terms of twenty-five years, each with a minimum period of confinement of six years.[2] Crawford appealed. In an unpublished opinion, this Court determined that the district court's failure to provide additional instructions to clear up the jury's confusion regarding the applicable law indicated by the second sentence of the jury question was reversible error as to Count I.[3] *See State v. Crawford*, Docket No. 38587 (Ct. App. June 27, 2012). Accordingly, we vacated Count I of Crawford's judgment of conviction and sentence and remanded for a new trial on that count. However, we determined that the error was harmless as to Count II and affirmed the judgment of conviction and sentence for that count. On remand, the state dismissed Count I.

Crawford filed a petition for post-conviction relief from his judgment of conviction under Count II for lewd conduct with a minor child under sixteen. In his petition, Crawford alleged that he had received ineffective assistance of trial and appellate counsel. Specifically, he asserted that trial counsel was deficient for failing to move for judgment of acquittal as to Count II on the basis that there was insufficient evidence to support a guilty verdict. He further argued that his trial counsel was ineffective for failing to request that the district court define "genital" in "manual-genital contact" as requiring contact with the vaginal area, which also

---

[2] Crawford was also charged with two counts of sexual abuse of a child under the age of sixteen for other conduct with Victim II, but the jury acquitted him of those counts.

[3] Specifically, we concluded that the district court should have instructed the jury further to clarify that touching of the breast area does not constitute manual-genital contact. *See State v. Kavajecz*, 139 Idaho 482, 486-87, 80 P.3d 1083, 1087-88 (2003) (holding that touching or kissing of the chest area of a minor child is not lewd conduct as defined under I.C. § 18-1508).

2

resulted in that issue not being preserved for appeal. Crawford also alleged that his appellate counsel provided ineffective assistance for failing to assert an insufficiency of the evidence claim as to Count II on appeal because it was the strongest issue on appeal for that count.

The state filed an answer and motion for summary dismissal, asserting that Crawford's proposed equation of the vaginal area with "genitals" as used in the statute was incorrect and that the evidence was sufficient to allow a reasonable jury to conclude that Crawford had engaged in manual-genital contact with Victim II. Crawford responded with a cross-motion for summary disposition, arguing that the state had not specifically denied his factual allegations in his petition, which he claimed created a prima facie case showing ineffective assistance of trial and appellate counsel. After a hearing, the district court denied Crawford's cross-motion and granted the state's motion for summary dismissal. The district court reasoned that a motion for judgment of acquittal before or after the verdict would not have been successful because there was substantial circumstantial evidence giving rise to a reasonable inference that Crawford had engaged in manual-genital contact with Victim II. The district court also concluded that, for the same reasons, an insufficiency of the evidence claim would not have been successful on appeal. In addition, the district court determined that a request to define "genitals" or to answer "yes" to the jury's question asking whether manual-genital contact required touching the vaginal area would have been denied as improper and an inaccurate statement of what the law required. Accordingly, the district court concluded that Crawford's trial and appellate counsel had not provided ineffective assistance and summarily dismissed Crawford's petition for post-conviction relief. Crawford appeals.

## II.

## STANDARD OF REVIEW

A petition for post-conviction relief initiates a proceeding that is civil in nature. I.C. § 19-4907; *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); *State v. Bearshield*, 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Murray v. State*, 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct. App. 1992). Like a plaintiff in a civil action, the petitioner must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. *Goodwin v. State*, 138 Idaho 269, 271, 61 P.3d 626, 628 (Ct. App. 2002). A petition for post-conviction relief differs from a complaint in an ordinary civil action. *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004). A petition must contain much more than a short

3

and plain statement of the claim that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, a petition for post-conviction relief must be verified with respect to facts within the personal knowledge of the petitioner, and affidavits, records, or other evidence supporting its allegations must be attached or the petition must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the petition must present or be accompanied by admissible evidence supporting its allegations or the petition will be subject to dismissal. *Wolf v. State*, 152 Idaho 64, 67, 266 P.3d 1169, 1172 (Ct. App. 2011).

Idaho Code Section 19-4906 authorizes summary dismissal of a petition for post-conviction relief, either pursuant to a motion by a party or upon the court's own initiative, if it appears from the pleadings, depositions, answers to interrogatories, and admissions and agreements of fact, together with any affidavits submitted, that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. When considering summary dismissal, the district court must construe disputed facts in the petitioner's favor, but the court is not required to accept either the petitioner's mere conclusory allegations, unsupported by admissible evidence, or the petitioner's conclusions of law. *Roman v. State*, 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct. App. 1994); *Baruth v. Gardner*, 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct. App. 1986). Moreover, the district court, as the trier of fact, is not constrained to draw inferences in favor of the party opposing the motion for summary disposition; rather, the district court is free to arrive at the most probable inferences to be drawn from uncontroverted evidence. *Hayes v. State*, 146 Idaho 353, 355, 195 P.3d 712, 714 (Ct. App. 2008). Such inferences will not be disturbed on appeal if the uncontroverted evidence is sufficient to justify them. *Id.*

Claims may be summarily dismissed if the petitioner's allegations are clearly disproven by the record of the criminal proceedings, if the petitioner has not presented evidence making a prima facie case as to each essential element of the claims, or if the petitioner's allegations do not justify relief as a matter of law. *Kelly v. State*, 149 Idaho 517, 521, 236 P.3d 1277, 1281 (2010); *DeRushé v. State*, 146 Idaho 599, 603, 200 P.3d 1148, 1152 (2009). Thus, summary dismissal of a claim for post-conviction relief is appropriate when the court can conclude, as a matter of law, that the petitioner is not entitled to relief even with all disputed facts construed in the petitioner's favor. For this reason, summary dismissal of a post-conviction petition may be

4

appropriate even when the state does not controvert the petitioner's evidence. *See Roman*, 125 Idaho at 647, 873 P.2d at 901.

Conversely, if the petition, affidavits, and other evidence supporting the petition allege facts that, if true, would entitle the petitioner to relief, the post-conviction claim may not be summarily dismissed. *Charboneau v. State*, 140 Idaho 789, 792, 102 P.3d 1108, 1111 (2004); *Sheahan v. State*, 146 Idaho 101, 104, 190 P.3d 920, 923 (Ct. App. 2008). If a genuine issue of material fact is presented, an evidentiary hearing must be conducted to resolve the factual issues. *Goodwin*, 138 Idaho at 272, 61 P.3d at 629.

On appeal from an order of summary dismissal, we apply the same standards utilized by the trial courts and examine whether the petitioner's admissible evidence asserts facts which, if true, would entitle the petitioner to relief. *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010); *Sheahan*, 146 Idaho at 104, 190 P.3d at 923. Over questions of law, we exercise free review. *Rhoades*, 148 Idaho at 250, 220 P.3d at 1069; *Downing v. State*, 136 Idaho 367, 370, 33 P.3d 841, 844 (Ct. App. 2001).

### III.

### ANALYSIS

Crawford does not allege that there is a genuine issue of material fact requiring an evidentiary hearing. Instead, he argues that the district court erred in granting summary dismissal in favor of the state and denying his cross-motion for summary dismissal because he is entitled to relief as a matter of law. Specifically, Crawford makes three claims of ineffective assistance of counsel. He alleges that trial counsel was ineffective for failing to make a motion for judgment of acquittal and for failing to request that the district court define the term "genital" or respond affirmatively to the jury's question asking whether touching the "vaginal area" was required for manual-genital contact. Crawford also asserts that appellate counsel was ineffective for failing to contest the sufficiency of the evidence as to Count II on appeal.

A claim of ineffective assistance of counsel may properly be brought under the post-conviction procedure act. *Murray*, 121 Idaho at 924-25, 828 P.2d at 1329-30. To prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Hassett v. State*, 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct. App. 1995). To establish a deficiency, the petitioner has the burden of showing that the attorney's

representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the petitioner must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 694; *Aragon*, 114 Idaho at 761, 760 P.2d at 1177. We have long adhered to the proposition that tactical or strategic decisions of trial counsel will not be second-guessed on appeal unless those decisions are based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation. *State v. Dunlap*, 155 Idaho 345, 383, 313 P.3d 1, 39 (2013); *Howard v. State*, 126 Idaho 231, 233, 880 P.2d 261, 263 (Ct. App. 1994). Indeed, there is a strong presumption that trial counsel was competent and that trial tactics were based on sound legal strategy. *Strickland*, 466 U.S. at 689; *Dunlap v. State*, 141 Idaho 50, 58-59, 106 P.3d 376, 384-85 (2004).

## A.    Sufficiency of the Evidence at Trial

Crawford argues that his trial counsel provided ineffective assistance by failing to make a motion for judgment of acquittal under I.C.R. 29 both before and after the jury verdict. Whether to move for judgment of acquittal is a tactical or strategic decision. *See State v. Kraft*, 96 Idaho 901, 905, 539 P.2d 254, 257-58 (1975). Generally, the failure to make a motion for judgment of acquittal cannot form the basis of a claim of ineffective assistance of counsel. *State v. Adair*, 99 Idaho 703, 707-08, 587 P.2d 1238, 1242-43 (1978). This is especially true when the reviewing court concludes that sufficient evidence to withstand such a motion was presented. *See id.* at 707, 587 P.2d at 1242; *Kraft*, 96 Idaho at 905, 539 P.2d at 257. Indeed, where the alleged deficiency is counsel's failure to make or file a motion, a conclusion that the motion, if pursued, would not have been granted by the trial court, is generally determinative of both prongs of the *Strickland* test. *Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996). Accordingly, the summary dismissal of Crawford's claim of ineffective assistance of trial counsel was proper if there was sufficient evidence upon which the trial court could have denied a motion for judgment of acquittal.

Idaho Criminal Rule 29 provides that, when a verdict of guilty is returned, the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offense. The test applied when reviewing the trial court's ruling on a motion for judgment of acquittal is to determine whether the evidence was

6

sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

To prove lewd conduct with a minor child under sixteen, the state must prove that the defendant engaged in "any lewd or lascivious act or acts," which includes manual-genital contact, and that such was "done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party." I.C. § 18-1508. Crawford argues that the only evidence supporting a finding that there was manual-genital contact between him and Victim II was her testimony. However, Crawford contends that Victim II did not directly testify that he touched her genitals. During direct examination by the state, Victim II testified as follows:

> Q: Okay. And so let's go back to the touching. Besides touching when he was rubbing your leg, was he getting close to where your underwear was at?
> A: Yes.
> Q: In fact, was he up there to your privates?
> A: Yes.
> Q: And so do you remember a time when you were in the kitchen with your dad?
> A: Yes.
> Q: Can you kind of tell the jurors a little bit about when that was.
> A: When it was?
> Q: About how old you were.
> A: I was in 8th grade . . . .
> Q: Okay. So what were you doing in the kitchen?

A: He was offering me an alcoholic drink and I had told him that I didn't want any alcohol. And I don't know how the conversation got brought up, but he asked me what a clit was and I told him that I didn't know what that was.
. . . .
Q: And then what did he do?
A: He said, "Well, let me show you," and then went to go show me, and I, like, backed away when he was going to show me.
Q: Okay. So did his hands touch you?
A: Yeah.
Q: Where did they touch you?
A: *Outside of my vaginal area.*
Q: Okay. So was he going down, like down from your shorts or was he going up?
A: Up.

(Emphasis added.) According to Crawford, the statement that he touched "outside of [her] vaginal area" can only be interpreted to mean that Crawford had not touched Victim II's genitalia, but had instead touched outside of her genital area.

We disagree. Victim II's statement that Crawford touched her "outside of [her] vaginal area" does not demand a conclusion that Crawford did not engage in manual-genital contact. It is the province of the jury to determine what the witness meant by the ambiguous phrase "outside of [her] vaginal area," and we will not substitute our view for that of the jury as to the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *Decker*, 108 Idaho at 684, 701 P.2d at 304.

Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). Even when circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to reasonable inferences of guilt. *Severson*, 147 Idaho at 712, 215 P.3d at 432; *State v. Slawson*, 124 Idaho 753, 757, 864 P.2d 199, 203 (Ct. App. 1993).

Such is the case here. The jury could have reasonably interpreted Victim II's statement that Crawford touched her "outside of [her] vaginal area" to mean, among other things, that Crawford had touched the external genitalia outside of her vagina or touched the area surrounding her genitalia (as Crawford proposes). As noted by the district court, the jury had the opportunity to observe Victim II's demeanor as she testified and take note of her reluctance to describe what happened to her. Moreover, not only did Victim II testify that Crawford touched

8

her "outside of [her] vaginal area," but she also responded affirmatively to the question that he was "up there to [her] privates." This response was given without reference to any specific event. However, it did follow a discussion regarding prior touching of Victim II's upper thigh that had made her uncomfortable and immediately preceded the discussion of the incident in the kitchen comprising Count II. Moreover, the kitchen incident is the only incident to which an assertion that Crawford had touched "up there to [Victim II's] privates" would logically correlate, as all other incidents to which she testified involved him touching her "upper thigh," "close to [her] private area," or "outside of [her] bikini line." A jury could have reasonably understood this affirmation by Victim II that Crawford had touched "up there to [her] privates" as referencing the single count for which the state was arguing that such manual-genital contact had occurred. Thus, the circumstantial evidence in the record, although subject to differing interpretations, supports a reasonable inference of guilt consistent with the jury's verdict.

Accordingly, we hold that there was substantial evidence upon which a reasonable trier of fact could have found that the essential elements of lewd conduct with a minor child under sixteen, including manual-genital contact, were proven beyond a reasonable doubt in this case. As a result, a motion to acquit by Crawford's trial counsel would have properly been denied, so the tactical decision to not make such a motion did not constitute ineffective assistance.

**B.      Sufficiency of the Evidence on Appeal**

Crawford also argues that it was error for his appellate counsel to not raise the issue of insufficient evidence of manual-genital contact on appeal. However, this claim would have failed on appeal for the same reasons it would have failed at trial, as already discussed. Appellate counsel is not ineffective for choosing not to raise weak issues that are likely to be denied. *See Mintun v. State*, 144 Idaho 656, 661, 168 P.3d 40, 45 (Ct. App. 2007) ("[T]he process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being the evidence of incompetence, is the hallmark of effective appellate advocacy.") Accordingly, Crawford's appellate counsel was not ineffective for not raising the issue of sufficiency of the evidence as to Count II on appeal.

**C.      Response to Jury Question**

Crawford contends that his trial counsel also provided ineffective assistance by failing to request that the district court define "genital" or give an affirmative answer to a jury question of whether touching the "vaginal area" was required for manual-genital contact under the statute.

9

In general, it is within the trial court's discretion to determine whether, and the manner in which, to respond to a question posed by the jury during deliberations. I.C.R. 30(c); *State v. Sheahan*, 139 Idaho 267, 282, 77 P.3d 956, 971 (2003); *State v. Pinkney*, 115 Idaho 1152, 1154, 772 P.2d 1246, 1248 (Ct. App. 1989). This grant of discretion is premised on the assumption that the instructions as given are clear, direct, and proper statements of the law. *Pinkney*, 115 Idaho at 1154, 772 P.2d at 1248. Consequently, if a jury expresses doubt or confusion on a point of law correctly and adequately covered in a given instruction, the trial court in its discretion may explain the given instruction or further instruct the jury, but it is under no duty to do so. *Id.* However, if a jury makes explicit its difficulties with a point of law pertinent to the case, thereby revealing a defect, ambiguity or gap in the instructions, then the trial court has the duty to give such additional instructions on the law as are reasonably necessary to alleviate the jury's doubt or confusion. *Id.*; *see also* I.C. §§ 19-2132(a) and 19-2204 (providing that a trial court must instruct the jury on all matters of law necessary for their information).

Here, the jury was instructed that, in order to find Crawford guilty of lewd conduct as charged in Count II, the jury had to find that the state proved Crawford committed an act of manual-genital contact upon or with the body of Victim II. The jury instructions did not define "genital." During deliberations, the jury asked several questions, including the question at issue here: "In order to have committed manual-genital contact, does it require touching the *vaginal* area? Does touching of the breast-area constitute manual-genital contact?" Crawford's counsel indicated that he believed the answer was "no." The district court stated, "No, the answer is reread the instructions. I'm not going to define for them manual-genital contact." The state agreed with the district court. The district court concluded:

> Well, if the jury--I do not feel comfortable defining, and, in fact, there's case law that says not only should you default to the standard instructions, but that while--while it may seem--it's tempting to want to define every single word, that it's inappropriate for the court to do so and that the jurors have to apply their understanding--their common ordinary understanding to it. And, therefore, I'm just going to tell them to reread the instructions.

Crawford argues that it was objectively deficient performance for his trial counsel not to either request that the district court define "genital" or provide an affirmative response to the first sentence of the jury's question. Crawford also argues that, had trial counsel made such a request, the issue would have been preserved for appeal, and the district court's decision would have been reversed on appeal. However, this claim relies on Crawford's assertion that "vaginal area" is

10

synonymous with "genital" as used in I.C. § 18-1508. This is incorrect. The jury was properly instructed as to the elements of the crime charged in Count II that they were required to find beyond a reasonable doubt. The jury's question of whether touching the "vaginal area" was required for manual-genital contact does not indicate difficulties or confusion as to the law that could not be adequately resolved by the instructions given: the state had to prove manual-genital contact, not "vaginal area" contact.[4] Thus, the district court had discretion on whether and in what manner to instruct the jury further regarding its question.

The district court opted to instruct the jury to "reread the jury instructions," leaving to the jury the decision of whether the evidence, as presented, sufficed to constitute manual-genital contact as charged in Count II. As noted by the district court in its summary dismissal, terms which are of common usage and are generally understood need not be further defined when instructing the jury. *State v. Draper*, 151 Idaho 576, 589, 261 P.3d 853, 866 (2011); *State v. Caldwell*, 140 Idaho 740, 742, 101 P.3d 233, 235 (Ct. App. 2004). Crawford concedes that the common understanding of the term "genital" usually refers to the external genitalia, including the labia and clitoris, but also includes the internal sex organs, such as the vagina, cervix, and uterus. *See, e.g.*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 946 (1993) (defining "genitalia" as "the organs of the reproductive system; *esp*: the external genital organs"). Thus, the trial court did not err by not defining "genital" further for the jury, and the decision by Crawford's trial counsel not to request that the trial court do so did not constitute ineffective assistance.

Additionally, as noted by the district court and previously discussed, an affirmative answer to the jury's question would have been inaccurate and may have confused the jury, as the "vaginal area" and "genitals" are not necessarily synonymous. Although touching the vaginal area is sufficient, it does not solely constitute manual-genital contact under I.C. § 18-1508. Moreover, the state bore the burden of proving manual-genital contact, not "vaginal area" contact, so an instruction that touching the vaginal area was required would have been erroneous. As a result, Crawford's trial counsel was not ineffective for not requesting that the trial court provide a definition of the commonly understood term "genital" or provide an inaccurate affirmative response to the jury question, as those requests would have been properly denied.

---

[4] Our prior decision on direct appeal principally concerned the question relating to touching the breast area, which was factually involved in Count I, but not Count II.

## IV.

## CONCLUSION

Crawford has failed to show that his trial and appellate counsel provided ineffective assistance of counsel as a matter of law, as there was substantial evidence to support the jury's verdict and Crawford's proposed response to the jury's question was an inaccurate statement of law. Accordingly, the district court's summary dismissal of Crawford's petition for post-conviction relief is affirmed. No costs or attorney fees are awarded on appeal.

Judge GRATTON, **CONCURS**.

Chief Judge GUTIERREZ, **DISSENTING**

Because I conclude that Crawford has demonstrated ineffective assistance of counsel, the district court's grant of the State's motion for summary dismissal should be reversed and the district court's denial of Crawford's cross-motion for summary disposition should be reversed. Accordingly, I respectfully dissent.

A.      **Sufficiency of the Evidence**

Important to today's post-conviction appeal is Victim II's testimony at the criminal trial.[1] Rather than beginning with the incident at issue in Count II--the underlying count for this post-conviction appeal--the prosecutor began with general questions about Crawford's touching of Victim II. Specifically, Victim II testified that before she was thirteen (2006 or earlier) and after she was thirteen (2006 and later), she was touched by Crawford and that she became uncomfortable with Crawford's touching at around age thirteen. Victim II explained that Crawford would touch her "on [her] upper thigh," and "[c]lose to [her] private area." Crawford,

---

[1]      The facts in this case arise from a single trial, with three counts of alleged crimes involving Victim II (Counts II-IV). Relevant to this appeal, Count II of the information, based on the district court's oration, alleged that on or between 2007 and 2008 in the state of Idaho, Crawford committed an act of manual-genital contact upon or with the body of Victim II, and that Crawford committed the act with the specific intent to arouse, appeal to, or gratify the lust or passions or sexual desires of Crawford, Victim II, or another person.

In closing argument, the prosecutor clarified that Count II related to an incident in the kitchen in which Crawford asked Victim II if she knew what a clitoris was. The prosecutor also clarified what Counts III and IV referred to. Count III referred to an event around Christmas 2008 in which Crawford exposed his penis. Count IV referred to when Crawford grabbed Victim II's breast and also "when he's rubbing up toward her panty line getting closer and closer."

12

according to Victim II, was getting close to where her underwear was at, and in fact was up there to her privates.

After eliciting this general testimony from Victim II, the prosecutor moved on and proceeded to ask Victim II about the kitchen incident, the subject of Count II. Victim II explained that she was in the kitchen at her home and was wearing pajama shorts and a tank top. According to Victim II, Crawford offered her alcohol, which she refused, but during the discussion in the kitchen, Crawford asked Victim II if she knew what a "clit" (clitoris) was. After she responded that she did not know what a clitoris was, Victim II explained Crawford's actions:

| | |
|---|---|
| [Victim II]: | He said, "Well, let me show you," and then went to go show me, and I, like, backed away when he was going to show me. |
| [The prosecutor]: | Okay. So did his hands touch you? |
| [Victim II]: | Yeah. |
| [The prosecutor]: | Where did they touch you? |
| [Victim II]: | Outside of my vaginal area. |
| [The prosecutor]: | Okay. So was he going down, like down from your shorts or was he going up? |
| [Victim II]: | Up. |
| [The prosecutor]: | Did you -- did you make any comments to him? |
| [Victim II]: | I just told him that I was going to bed and I went upstairs and just went straight to bed. |

Following Victim II's testimony regarding the kitchen incident, the prosecutor moved on to another incident that occurred while Victim II and Crawford were watching television.[2] This incident was offered with regard to Count IV, as best can be gleaned from the closing argument. In her testimony, Victim II explained that Crawford and she would be on the couch, that Crawford would pull a blanket out and put it over the two of them, and that Crawford would start rubbing her upper thigh. She clarified that Crawford would begin at the knee area and move upward, toward her "privates" and just "outside of [her] bikini line." The prosecutor, while questioning about this incident, also asked, "At some point did you remove his hand from around your vaginal area or from near your vaginal area?" Victim II said, "Yeah."

The prosecutor then shifted gears to an incident in December 2008, near Christmas, that was the basis for Count III. During this December 2008 incident, Crawford showed Victim II his

---

[2]     Although the prosecutor asked Victim II to "describe for us an incident when you were about 13 and watching TV," Victim II's answers allude to multiple times in which Crawford pulled the blanket over himself and Victim II, and implicate that Crawford touched her on multiple occasions.

13

penis and asked her to look at it. Following Victim II's testimony, the prosecutor went on to another incident at a television sports party in which Crawford, in front of guests, grabbed Victim II's left breast (presumably, over her clothing) and exclaimed, in a joking manner according to Victim II, that she was "growing boobs." This incident, like the television incident, was also offered in support of Count IV, based upon the prosecutor's closing argument. The last incident brought out by the prosecutor also was in support of Count IV. In the last incident, Victim II explained that she was talking to her grandfather on the phone when Crawford started rubbing her stomach and started moving his hand toward her breasts, before she pushed his hands away.

The crux of this appeal, as it relates to the ineffective assistance of counsel claims, turns on whether Victim II's testimony concerning Count II about Crawford touching her *outside* her vaginal area refers to touching Victim II's genitalia. Victim II's testimony is problematic in this case because Victim II's testimony about being touched *outside* the vaginal area does not clarify whether Crawford touched her genitalia or touched her outside of the genitalia. The phrase vaginal area is ambiguous; this Court and the Idaho Supreme Court have used the phrase to refer to the genital area, but the courts have also used the phrase more specifically to refer to the area around the vaginal orifice. *Compare, e.g.*, *State v. Cardell*, 132 Idaho 217, 220, 970 P.2d 10, 13 (1998) (interchanging vaginal area with genitalia), *and State v. Mayer*, 139 Idaho 643, 649 84 P.3d 579, 585 (Ct. App. 2004) (equating vaginal area with genital area), *with State v. Lewis*, 96 Idaho 743, 745, 536 P.2d 738, 740 (1975) (describing a doctor's testimony in which the doctor explained that he found no evidence of torn or bruised tissue in the vaginal area, presumably referring to the specific area around the vaginal orifice), *and State v. Durst*, 126 Idaho 140, 143, 879 P.2d 603, 606 (Ct. App. 1994) (discussing a physician's testimony in which "[h]e testified that in his opinion, to a reasonable degree of medical certainty, the victim's injuries were caused by a forced entry of the vaginal area by penile penetration."). Similarly, the courts have used the term vagina where, in context, the proper term should be external genitalia. *E.g.*, *State v. Pepcorn*, 152 Idaho 678, 687, 273 P.3d 1271, 1280 (2012) (paraphrasing the victim's testimony to explain that "Pepcorn placed his hand on her thigh then slowly moved it up to her vagina and

14

let it rest there as she rode in front of him on four-wheeler rides."). The vagina is, in fact, an internal genital,[3] but genitalia also includes the external genitals, namely the vulva.[4]

In considering Victim II's testimony, the majority opinion errs by using Victim II's general testimony about Crawford's touching throughout the years in support of Victim II's statements about the kitchen incident. Specifically, the majority relies upon Victim II acknowledging that throughout the years, Crawford would touch her on her upper thigh, close to her private area, close to where her underwear was at, and up to her privates. But Victim II's testimony about Crawford's actions throughout the years did *not* state that Crawford specifically touched her this way during the kitchen incident. More importantly, even though Crawford may have touched Victim II close to her genitalia throughout the years, the general testimony did *not* state that Crawford actually touched any part of her genitalia.

The majority also attempts to support its use of the general testimony about the touching by contending that "the kitchen incident is the only incident to which an assertion that Crawford had touched 'up there to [Victim II's] privates' would logically correlate." This contention is incorrect. In her testimony about the television and blanket incident (or incidents), Victim II acknowledged that she removed Crawford's hand "from around [her] vaginal area or from near [her] vaginal area," but this testimony related to another incident and count.

In fact, the testimony about Crawford's touching throughout the years is far too general to relate to any specific incident; Count II, as clarified by the prosecutor, only focuses on the kitchen incident. Besides the fact that Victim II's testimony is too general to relate to any specific incident, it would still be unreasonable for a jury to draw an inference that Crawford actually touched Victim II's genitalia during the kitchen incident, because Victim II never indicated that Crawford actually touched her genitalia in her general testimony about Crawford's actions throughout the years.

Although unaddressed by the majority opinion, there was testimony at the criminal trial that clarifies what Victim II was referring to in the kitchen incident. A sex crimes investigator

---

[3] The vagina is "a canal that leads from the uterus of a female mammal to the external orifice of the genital canal." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2528 (1993).

[4] The vulva is "the external parts of the female genital organs." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2567 (1993).

with the Meridian Police Department interviewed Victim II. During his testimony, he explained what Victim II told him in regard to the kitchen incident:

> [The prosecutor]: And did [Victim II] tell you what her response was when she indicated that [Crawford] had made a quick move toward her to show her what a clit was?
>
> [The investigator]: Yes, she had indicated that he had reached his hand up the pants leg of her shorts.
>
> [The prosecutor]: Okay.
>
> [The investigator]: He was trying to get her -- get his hand inside of her underwear and she stepped away from him and told him no.

The investigator's testimony is consistent with Victim II's testimony that she "backed away when he was going to show me" what a clitoris was. However, Victim II indicated to the investigator that Crawford *tried* to get his hand inside of her underwear (presumably trying to make contact with her genitalia). The reasonable inference drawn from Victim II's and the investigator's testimony is that Crawford was attempting to touch the genital area under Victim II's underwear, but touched Victim II outside of her genital area and did not touch her external genitalia.

Taken together, the evidence and all reasonable inferences do not lead to the conclusion that Crawford touched Victim II's genitalia during the kitchen incident; rather, the evidence and inferences lead to the opposite conclusion. For this reason, I would hold that defense counsel provided deficient performance by failing to move for judgment of acquittal, as it would have been objectively reasonable to make such a motion. I would also conclude that appellate counsel provided deficient performance by failing to raise the issue of sufficiency of the evidence, as this issue was clearly stronger than the issues presented in the first appeal. Prejudice is shown in both instances because a favorable ruling would have led to Crawford being acquitted of Count II.

## B.      Response to the Jury Question

Finally, Crawford asserts that defense counsel provided ineffective assistance of counsel by failing to request that the court define genital in response to part of a jury question or provide an affirmative response to the first part of the same jury question. During jury deliberations, the jury asked the court a two-part question, which stated, "In order to have committed manual-genital contact, does it require touching the vaginal area? Does touching of the breast area constitute manual-genital contact?" Crawford's defense counsel recommended a single answer, saying, "No." The court responded, "No, the answer is reread the instructions. I'm not going to

16

define for them manual-genital." The court then referred to the prosecutor, and the prosecutor expressed her view that the jury asked a two-part question: "I think they have a two-part question, does it include the vaginal area and does it [ ] include breast. So, I mean, how can you say no?" Following the prosecutor's remarks, the court decided that it would instruct the jury to reread the instructions.

The majority concludes that the jury's question "does not indicate difficulties or confusion as to the law that could not be adequately resolved by the instructions given." I disagree; so, too, did the panel on direct appeal. *State v. Crawford*, Docket No. 38787 at 3 (Ct. App. June 27, 2012) ("By asking, 'In order to have committed manual-genital contact, does it require touching the *vaginal* area? Does touching of the breast-area constitute manual-genital contact?' the jury expressed doubt or confusion on a point of law not adequately covered in the jury instructions and pertinent to this case, thereby revealing a defect, ambiguity, or gap in the instructions. Thus, the district court had the duty to give additional instructions on the law reasonably necessary to alleviate the jury's doubt or confusion."). As this Court explained in the prior unpublished opinion, in general, it is within the trial court's discretion to determine whether, and the manner in which, to respond to a question posed by the jury during deliberations. *State v. Sheahan*, 139 Idaho 267, 282, 77 P.3d 956, 971 (2003). This grant of discretion is premised on the assumption that the instructions as given are clear, direct, and proper statements of the law. *Id.* Consequently, if a jury expresses doubt or confusion on a point of law correctly and adequately covered in a given instruction, the trial court in its discretion may explain the given instruction or further instruct the jury, but it is under no duty to do so. *Id.* However, if a jury makes explicit its difficulties with a point of law pertinent to the case, thereby revealing a defect, ambiguity or gap in the instructions, then the trial court has the duty to give such additional instructions on the law as are reasonably necessary to alleviate the jury's doubt or confusion. *Id.* Under this reasoning, we held in the direct appeal that the district court had the duty to give additional instructions on the law reasonably necessary to alleviate the jury's doubt or confusion concerning manual-genital contact. *See Crawford*, Docket No. 38787 at 3.

The last issue raised by Crawford in this appeal, though, is not whether the district court erred when it failed to give clarifying instructions, but whether counsel provided ineffective assistance of counsel. I would hold that it was objectively unreasonable for defense counsel not to request that the court otherwise clarify the law to alleviate the jury's doubt or confusion. Had

17

defense counsel requested the court to otherwise clarify the law to alleviate the jury's doubt or confusion, and the court given the instruction, there is a reasonable probability that Crawford would have been acquitted by the jury.

In summary, the district court erred by granting the State's motion for summary dismissal. As for Crawford's cross-motion for summary disposition, there is no genuine issue of material fact, and Crawford is entitled to judgment as a matter of law on each of the three ineffective assistance of counsel claims; accordingly, the district court erred by denying Crawford's cross-motion for summary disposition.