539 P.2d 254

**The STATE of Idaho, Plaintiff-Respondent,**

v.

**Jack KRAFT, Defendant-Appellant.**

**No. 11596.**

Supreme Court of Idaho.

Aug. 5, 1975.

**902**

Jonathan W. Cottrell of Rayborn, Rayborn & Ronayne, Twin Falls, for defendant-appellant.

Wayne Kidwell, Atty. Gen., James W. Blaine, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McQUADE, Chief Justice.

Defendant-appellant Jack Harold Kraft was charged by information with the commission of the felony of rape,[1] which was alleged to have occurred on July 15, 1973 in Twin Falls County, Idaho. A jury found appellant guilty as charged upon which a judgment of conviction was entered. It is from that judgment that this appeal has been brought. We affirm.

■ In his first assignment of error appellant argues that the state's evidence failed to establish a prima facie case against him, in that there was insufficient corroboration not only as to his purported involvement in the alleged offense, but as to its very occurrence. He therefore contends that the trial court should have instructed the jury to return a verdict of acquittal.

The prosecutrix testified that the alleged act of rape occurred in the early morning hours of July 15, 1973, at approximately 1:20 a. m. while she was alone in her apartment. She stated that she was alseep on her bed when she felt "something or someone standing over her" at which point she began to scream. She then related that an object which she thought was a knife at the time, (but which was later identified as a kitchen fork) was placed near her throat by her assailant who threatened to kill her if she did not stop screaming. She then recounted how she continued to scream whereupon her assailant put his hand over her mouth and told

---

1. The statute defining rape insofar as it is pertinent to this appeal reads:
 "18–6101. *Rape defined.*—Rape is an act of sexual intercourse accomplished with a female not the wife of the perpetrator, under either of the following circumstances:
 3. Where she resists, but her resistance is overcome by force or violence.

4. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution; or by any intoxicating narcotic, or anaesthetic substance administered by or with the privity of the accused."

her to shut up. After that occurred she testified that she stopped screaming.

The prosecutrix further testified that her assailant ". . . got on top of me and he asked me if I wanted him to make love to me; and I said no." At this time he still had the kitchen fork in his hand, but then placed the fork out of her reach on the other side of the bed. She then asked her assailant if he would put the fork on the night stand because,

". . . I realized that I couldn't reach the fork where it was. And I was trying to decide about something I could do, some way I could reach it. So I asked him if he would put the fork on the night stand because I knew if I had a chance to reach it I could reach it better if it was on the night stand. And so he did."

While the alleged illicit act of intercourse was occurring the prosecutrix started to reach for the fork, but her assailant grabbed her hands preventing her from getting to it. Following the alleged rape, the assailant hurriedly got dressed and left. After the assailant's departure the prosecutrix went to her bedroom window where she hoped to and did catch another glimpse of her assailant. Then after spending some time attempting to compose herself, she phoned the police to report what had happened.

There is sufficient evidence of the circumstances surrounding the alleged rape to clearly corroborate the prosecutrix's account of what transpired in her apartment against her will in the early morning hours of July 15, 1973, so as to sustain the judgment of conviction that was entered. A review of the record indicates that the prosecutrix reported the occurrence of this offense within a few hours after her assailant left her apartment. The investigating officer upon arriving at the scene found her visibly shaken, in tears and very upset. The kitchen fork which the prosecutrix testified to last seeing hanging over the stove "where it belonged," before going to bed that night, was found by the investi-gating officer on a counter in a kitchenette room between the living room and kitchen. The investigating officer after finding out from the prosecutrix what had happened, relayed her description of the assailant and the clothing he was wearing at the time to the detective on call at the police station. This description accurately matched that of a suspect (later identified as appellant) who had been arrested shortly after 3 a. m. in the morning of July 15, 1973, on a suspicion of burglary charge. Further confirmation of her assailant's identity occurred at a lineup held later in the morning of the 15th of July, when the prosecutrix identified appellant (among four other possible suspects) as the perpetrator of the rape.

After the testimony of the prosecutrix, the investigating officer, and the detective on call at the police station were heard, the state also called to the witness stand the doctor who had examined the prosecutrix a few hours after the alleged rape. While he could not say for sure whether she had or did not have sexual relations within the past twelve hours he did state that upon his examination he found:

"There was mild reddening of the vulva. That is the outside area. There was no evidence of any injury to the vaginal vault. There was a very minimum amount of mucoid material, not enough for pooling. . . ."

The state's final witness was an agent of the Federal Bureau of Investigation, qualified as an expert in conducting microscopic examinations and comparisons of hairs and fibers. The agent examined the following items which were sent to him by the Twin Falls Police Department: clothing worn by appellant at the time of the alleged offense; pubic and head hair samplings from appellant; a pubic hair sampling from the prosecutrix; and the bedspread taken from the prosecutrix's apartment upon which the alleged criminal act occurred. Based upon his examination, the agent testified as follows:

"A. Okay. The purpose of my examination, as I mentioned previously,

was to determine whether or not there was an interchange, whether or not I could detect an interchange between items submitted to me as having come from Mr. Kraft and items submitted to me as having come from Miss Ingle. On the items submitted to me as being the undershorts of Mr. Kraft, that is State's Exhibit G, and in the debris, which is State's Exhibit J which was removed from those undershorts, in that I found a brown, Caucasian pubic hair which microscopically matched the hairs submitted to me as having come from Miss Ingle. That is State's Exhibit H. Accordingly, I could conclude that this brown, Caucasian pubic hair which I found could have come from the same source as the hairs from Miss Ingle."

Later, on redirect examination, the agent further testified.

Q. (By Mr. Galley) Is it my understanding that the hair that came from Exhibit B, which the the pubic hairs of Miss Ingle, were found on Exhibit G, the shorts?

A. Hairs that were microscopically like —

Q. Right. What do you mean by "microscopically like"?

A. Well, the hairs from Exhibit B, which were the hairs from Miss Ingle, were compared microscopically with hairs from Exhibit G, the undershorts; and these hairs matched miscroscopically. That is what I mean.

The agent also testified that acrylic fibers from the prosecutrix's bedspread microscopically matched the fibers on appellant's trousers, although he admitted under cross-examination that the fibers found on the trousers could have come from another bedspread which had fibers that microscopically matched the fibers of the prosecutrix's bedspread.

■ We believe that the evidence when taken and considered together in its entirety furnished a sufficient quantum of corroborative proof to sustain appellant's conviction. It cannot be said that the evidence which was adduced at trial was insufficient as a matter of law to support the jury's finding of guilt.

"Whether or not the testimony of a prosecutrix is clearly corroborated by other facts and circumstances is, in the first instance, a question for the jury, and unless this court can say, as a matter of law, that such evidence is not clearly corroborative, we cannot reverse the cause upon that ground." [2]

■ Appellant's next assignment of error consists of two parts: first he contends that the trial court erred in failing to instruct the jury of their duty to judge the credibility of witnesses; and second he maintains that error was committed in the trial court's failure to instruct the jury that they might find him guilty of any lesser included offenses, in particular the included offenses of simple assault and battery or assault with intent to commit rape. Appellant admits that he made no request for these instructions at trial but argues that the trial court should have so instructed the jury on its own motion. We find no merit in either contention.[3]

In his next assignment of error, appellant argues that he was denied effective assistance of counsel at trial. He contends that his court appointed counsel's representation was inadequate in the following particulars: (1) failure to make an opening statement; (2) failure to move for a dismissal of charges against him after the state presented its case; (3) failure to present evidence on his behalf; (4) failure to offer jury instruction on the issues of

2. *State v. Hines*, 43 Idaho 713, 719, 254 P. 217, 218 (1927).

3. *See State v. Beason*, 95 Idaho 267, 506 P.2d 1340 (1973); *State v. Boyenger*, 95 Idaho 396, 509 P.2d 1317 (1973).

lesser included offenses and witness credibility.

This Court in a recently released opinion,[4] after a comprehensive analysis of the various standards utilized on the question of competency of counsel, issued the following guideline by which questions of competency of counsel would in the future be reviewed in this state:

"It is our opinion that the best enunciation of defense counsel's obligation is found in *United States v. DeCoster*, 487 F.2d 1197, 1202 (D.C.Cir., 1973)—'a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate'. We adopt this standard."[5]

Using this concept we will review appellant's specific allegations of incompetency.

 Appellant's first two allegations of incompetence fall within that area of the advocate's role which is characterized as "trial tactics" or "strategy choice." This Court does not sit to second guess with the benefit of hindsight tactical and strategic choices made by counsel at trial [6] unless these choices ". . . are made upon the basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation. . . ."[7] We cannot say that counsel's decision at trial to forego his opening statement, or his unwillingness to make a motion to dismiss the charges against his client were the result of inadequate pretrial investigation, ignorance of the applicable law or other objectively ascertainable shortcomings.

In this case appellant's counsel reserved his right to make an opening statement, as he is permitted to do, after the prosecuting attorney had tendered his statement. After the state rested, appellant's counsel declined to offer an operning statement although he had the opportunity to do so.

In light of the fact that he had no witnesses to call, nor testimony to introduce, his failure to tender an opening statement was not unreasonable. Rather it was apparently made in good faith and based upon his belief that tendering such a statement would be unavailing to his client's cause.

As to the motion to dismiss, the record indicates that such a maneuver would have been futile and not well taken. The evidence introduced by the state before it rested established a *prima facie* case against the appellant so that a defense motion to acquit even if it had been made, would properly have been denied.

 Turning our attention next to appellant's third allegation of incompetence we note what should be readily apparent, i.e., it is not enough for a defendant to allege that no evidence was introduced in his behalf at trial, and from that premise conclude as appellant has done that assistance of counsel was inadequate. Rather a defendant must specify or at least identify evidence in his favor which existed, and which should have been introduced at trial but was not due to the lack of diligent preparation on his counsel's part. Furthermore, appellant has not indicated what evidence existed which if it had been presented could have a different result. It might also be noted that appellant undermined the presentation of a defense in his behalf by first failing to deliver to his counsel a list of witnesses which he claimed he had, and secondly by withdrawing on his own motion the insanity defense which his counsel had prepared for him.

 Appellant's final allegation of incompetence of counsel is not meritorious. There was no evidence introduced at trial which would have warranted a jury instruction on any lesser included offense. As to counsel's failure to request an instruction on the jury's function to judge

___

4. *State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975).

5. *Id.*

6. *See United States v. DeCoster*, 487 F.2d 1197, 1201 (D.C.Cir., 1973).

7. *State v. Tucker*, *supra* n. 3, 97 Idaho at 4, 539 P.2d at 556.

the credibility of witnesses, we do not believe this oversight alone so prejudiced appellant's case as to render what was in all other respects reasonably competent assistance of counsel inadequate under the Sixth Amendment.

In his final assignment of error, appellant contends that the prosecuting attorney employed tactics calculated to create an inference in the minds of the jurors that he had committed or was suspected of committing on the morning of the alleged rape, additional criminal offenses totally independent from the crime for which he was standing trial. Appellant maintains that the entire line of the state's questioning to the detective who was on call at the Twin Falls police station on the morning of July 15, 1973, was for the sole purpose of eliciting testimony which would link him to burglaries which were reported to have occurred in the Twin Falls area on that morning. He argues that this testimony was utilized to strengthen an otherwise weak case, and amounted to prejudicial error. The record does not reflect such a calculated purpose on the prosecutor's part.

Appellant's counsel objected to this line of questioning on relevancy grounds, which objection was sustained by the trial court. No request was made by counsel to strike this testimony or to admonish the jury that appellant was on trial for the felony of rape and not for the crime of burglary. While it would have been better practice for the trial court to have administered a cautionary instruction to the jury with regard to the aforementioned testimony, we do not find its failure to do so sufficiently prejudicial to warrant reversal.[8]

Judgment of conviction is affirmed.

McFADDEN, DONALDSON, SHEPARD and BAKES, JJ., concur.

8. *See* I.C. § 19–2819, I.C. § 19–3702; *State v. Linebarger*, 71 Idaho 255, 232 P.2d 669

BAKES, Justice (concurring specially):

I concur in the majority opinion except that I would reserve for a subsequent post-conviction hearing the issue of competency of counsel raised and disposed of by the majority. The question of competency of counsel is an extremely complex factual determination which, in all but the most unusual cases, requires an evidentiary hearing for determination. *See State v. Tucker*, 97 Idaho 4, 539 P.2d 556 (1975). The resolution of those factual issues for the first time upon appeal, based upon a trial record in which competency of counsel was not at issue, is at best conjectural.

(1951); *State v. Tisdel*, 94 Idaho 329, 487 P.2d 692 (1971).