## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 43141

| | |
|---|---|
| SHANE CRAWFORD, | ) |
| | ) **Boise, January 2016 Term** |
| Petitioner-Appellant, | ) |
| | ) **2016 Opinion No. 41** |
| v. | ) |
| | ) **Filed: April 6, 2016** |
| STATE OF IDAHO, | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| Respondent. | ) |
| _____ | ) |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  Hon. Cheri C. Copsey, District Judge.

The district court's dismissal of appellant's petition for post-conviction relief is <u>affirmed.</u>

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, attorneys for appellant. Dennis Benjamin argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. John C. McKinney argued.

_____

W. JONES, Justice

### I. NATURE OF THE CASE

Shane Crawford ("Crawford"), the appellant, filed a petition for post-conviction relief following his conviction for lewd conduct with a minor under the age of sixteen, claiming that he received ineffective assistance of counsel at both the trial and appellate stages. At the trial stage, Crawford asserts that his counsel was deficient in failing to request that the court either instruct the jury that manual-genital contact requires touching the vaginal area or define the term "genital." He further asserts that his trial counsel erred by failing to move for acquittal based upon insufficient evidence. On direct appeal of the conviction, Crawford's counsel similarly did not raise a sufficiency of the evidence claim, which Crawford claims constituted ineffective assistance of appellate counsel. The district court summarily dismissed Crawford's petition, and

1

he appealed. The Court of Appeals affirmed the summary dismissal. Crawford now seeks relief from this Court to have the summary dismissal of his claim reversed. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On May 25, 2010, Crawford was charged by indictment with two counts of lewd conduct with a minor under sixteen and two counts of sexual abuse of a child under the age of sixteen.[1] Count I was for lewd conduct with a minor under the age of sixteen with his daughter ("Victim I"). Count II was for lewd conduct with a minor under the age of sixteen with his step-daughter ("Victim II"). Counts III and IV were for sexual abuse of a child under the age of sixteen with Victim II. The issue before this Court, Crawford's appeal of the summary dismissal of his petition for post-conviction relief, relates solely to Count II and Victim II; therefore, only the evidence relating to Count II will be discussed.

Victim II testified as to several instances in which Crawford had touched her inappropriately. She first testified that she was thirteen years old when Crawford's touching first became uncomfortable. She stated that Crawford would touch her upper thigh, and when asked "what was [the touching] close to?" she responded "Close to my private area." She did not say where this incident occurred. She continued that when Crawford was rubbing her leg, he was getting close to her underwear, and affirmatively responded when asked if "he was up there to [her] privates."

The prosecutor then began asking about a specific incident in the kitchen (the "Kitchen Incident"). Victim II testified that when she was in eighth grade, she and Crawford were in the kitchen of the house in which they were living. She said that Crawford "was offering me an alcoholic drink and I had told him that I didn't want any alcohol. And I don't know how the conversation got brought up, but he asked me what a clit was and I told him that I didn't know what that was." She testified that Crawford told her that he was going to show her, and despite her backing away, Crawford touched her with his hands at that point, going up from her pajama shorts. When asked where he touched, she replied "Outside of my vaginal area." The prosecutor

---

[1] Lewd conduct with a minor under the age of sixteen is governed by Idaho Code section 18-1508, which provides in pertinent part: "Any person who shall commit any lewd or lascivious act or acts upon or with the body or any part or member thereof of a minor child under the age of sixteen (16) years, including but not limited to . . . manual-genital contact . . . when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party, shall be guilty of a felony and shall be imprisoned in the state prison for a term of not more than life."

2

then asked if "he [was] going down, like down from your shorts or was he going up?" Victim II responded "Up."

The prosecutor then began asking about a separate incident that occurred while Victim II was watching TV with Crawford (the "TV Incident"). Victim II testified that when she was about thirteen, Crawford would get out a blanket when they were sitting on the couch together watching TV and cover them with it and "would just start rubbing my upper thigh." The prosecutor asked "upward toward your privates?" to which Victim II responded "yeah." When asked how far up Crawford would move his hands, Victim II stated "just, like, outside of my bikini line." The prosecutor asked Victim II "At some point did you remove his hand from around your vaginal area or from near your vaginal area?" and she responded "yeah."

After the close of evidence, the jury was instructed and began deliberations. The jury was instructed consistently with this Court's recommended jury instructions. The jury asked the trial judge a number of questions, but only Question Number 3 is relevant here. That question provided: "In order to have committed manual-genital contact does it require touching the vaginal area? Does touching of the breast-area [sic] constitute manual-genital contact?"

When the court posed this question to the parties and their attorneys, the following exchange occurred:

MR. ROKER [Defense Counsel]: I think the answer is no.

THE COURT: No, the answer is reread the instructions. I'm not going to define for them manual-genital. Cathy-- Miss Guzman.

MS. GUZMAN [Prosecuting Attorney]: I'm sorry. I'm slow today, I think the court is correct because I think they have a two-part question, does it include the vaginal area and does it the include [sic] breast: So, I mean, how can you say no?

THE COURT: Yeah, you can't.

MS. GUZMAN: You have to read the instructions. I think the instructions are clear.

THE COURT: Well, if the jury-- I do not feel comfortable defining, and, in fact, there's case law that says not only should you default to the standard instructions, but that while—while it may seem –it's tempting to want to define every single word, that it's inappropriate for the court to do so and that the jurors have to apply their understanding- their common ordinary understanding to it. And, therefore, I'm just going to tell them to reread the instructions. That's on this one.

The court ultimately instructed the jury to "Please re-read all the instructions." After deliberations, the jury returned verdicts of guilty as to Counts I and II, and not guilty as to Counts III and IV.

Crawford appealed the convictions on Counts I and II. In an unpublished opinion, the Court of Appeals held that the district court did not adequately respond to the jury's question. *State v. Crawford*, Docket No. 38587, 2012 WL 9492960 (Ct. App. June 27, 2012). The Court of Appeals determined that in response to the jury's question regarding whether touching the breast area constitutes manual-genital contact, the district court should have told the jury that touching of the breast area does not constitute manual-genital contact. *Id.* at *3. Therefore, the Court of Appeals vacated Count I and remanded for a new trial on that count. *Id.* at *4. On remand, the State moved to dismiss Count I and the district court granted the motion. Because Count II did not involve any allegations of touching the breast area, the Court of Appeals concluded that any error in failing to answer the question regarding touching of the breast area was harmless with respect to that count. *Id.* The Court of Appeals thus affirmed the judgment of conviction for Count II. *Id.*

Crawford filed a petition for post-conviction relief arguing that his trial counsel and his appellate counsel were ineffective with regard to Count II, the only remaining count. The district court summarily dismissed his petition for post-conviction relief. Crawford appealed the summary dismissal of his petition. In an unpublished opinion, the Court of Appeals affirmed the summary dismissal, with Chief Judge Gutierrez dissenting. Crawford sought review by this Court.

The subject of this Opinion stems from Crawford's petition for post-conviction relief claiming that he received ineffective assistance of counsel at both the trial and appellate stages. His petition alleges that his trial and appellate counsel were ineffective in the followings ways: (a) trial counsel failed to move for an Idaho Criminal Rule 29(a) judgment of acquittal as to Count II because there was insufficient evidence to show that Crawford touched Victim II's genitalia; (b) during jury deliberations, trial counsel failed to request the district court instruct the jury that manual-genital contact requires touching the vaginal area, and similarly failed to request that the district court define the term "genital" for the jury; and (c) appellate counsel failed to raise a claim of insufficient evidence to sustain a conviction.

### III. ISSUES ON APPEAL

4

**1.** Whether the district court erred by summarily dismissing Crawford's petition for post-conviction relief. Specifically, whether the following determinations by the district court were error:

    **a.** Crawford's trial counsel's performance was not deficient for failing to move for Rule 29 acquittal because there was substantial evidence to sustain his conviction.

    **b.** Crawford's trial counsel's performance was not deficient for failing to request that the court instruct the jury that manual-genital contact requires touching the vaginal area and for failing to request that the court define "genital."

    **c.** Crawford's appellate counsel's performance was not deficient for failing to raise a sufficiency of the evidence claim on appeal.

## IV. STANDARD OF REVIEW

When reviewing a decision by the Court of Appeals, this Court directly reviews the decision of the district court giving serious consideration to the intermediate appellate decision. *State v. Arthur*, 145 Idaho 219, 221–22, 177 P.3d 966, 968–69 (2008) (citing *State v. Sheahan*, 139 Idaho 267, 272–73, 77 P.3d 956, 961–62 (2003)). "[This Court] exercise[s] free review over the trial court's determination as to whether constitutional requirements have been satisfied in light of the facts found." *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013) (internal quotation omitted). Furthermore, in *Dunlap*, this Court outlined the standard for reviewing a summary dismissal of an application for post-conviction relief as follows:

> "Summary dismissal of an application [for post-conviction relief] is the procedural equivalent of summary judgment under I.R.C.P. 56. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact that, if resolved in the applicant's favor, would entitle the applicant to the relief requested. If such a factual issue is presented, an evidentiary hearing must be conducted. However, summary dismissal may be appropriate even where the State does not controvert the applicant's evidence because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law." [*State v. Payne*, 146 Idaho 548, 561, 199 P.3d 123, 136 (2008)] (citations omitted).
>
> "The standard to be applied to a trial court's determination that no material issue of fact exists is the same type of determination as in a summary judgment proceeding." *Charboneau v. State*, 140 Idaho 789, 793, 102 P.3d 1108, 1112 (2004). Thus, we view the facts in the light most favorable to the applicant and "must determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file." *Ridgley v. State*, 148 Idaho 671, 675, 227 P.3d 925, 929 (2010) (citations and internal quotations omitted).

*Dunlap*, 155 Idaho at 383, 313 P.3d at 39 (internal quotations within quotations omitted).

As indicated in *State v. Dunlap*, viewing the facts in the light most favorable to the applicant only applies to the factual basis upon which the applicant's petition is brought. *See id.* If the facts forming the basis for the petition are uncontested, then this Court freely reviews the conclusions of law. *Id.* This is why, despite viewing the facts in a light most favorable to the applicant, an applicant alleging ineffective assistance of counsel during a petition for post-conviction relief must still "overcome a strong presumption that trial counsel was competent and that trial tactics were based on sound legal strategy." *Id.* (quotations omitted). The burdens of proof relating to the conclusions of law are unaffected by the requirement to view all facts in a light most favorable to the applicant when those facts are not disputed. *Id.*

In this case, the facts forming the basis for Crawford's petition are undisputed. As the district court found, Crawford never filed any affidavits creating a dispute of material fact, nor did he request an evidentiary hearing. He and the State do not disagree on precisely which actions were taken by his attorneys, and precisely what the trial judge and jury did. Rather Crawford challenges the legal conclusions of the district court based upon those facts; conclusions over which this Court exercises free review.

## V. ANALYSIS

### A. The district court did not err in summarily dismissing Crawford's petition for post-conviction relief because Crawford has not demonstrated ineffective assistance of counsel at either the trial or the appellate stages.

To establish a claim for ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that he or she was prejudiced by that deficiency. *Aragon v. State*, 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

As to deficient performance, "there is a strong presumption that counsel's performance falls within the 'wide range of professional assistance.' [*Strickland*, 466 U.S. at 688]. Accordingly, the defendant bears the burden of proof to show that 'counsel's representation fell below an *objective* standard of reasonableness.' [*Strickland*, 466 U.S. at 687–88] (emphasis added)." *Aragon*, 114 Idaho at 761, 760 P.2d at 1177.

"In regard to the second element, the [United States] Supreme Court has defined prejudice as 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "Prejudice is presumed in some instances, for example, where the defendant is denied counsel altogether, or

6

where counsel represents conflicting interests. Generally, however, the defendant must affirmatively prove prejudice." *Id.*

        1.     *Crawford has not established that his counsel's performance was ineffective for failing to make an Idaho Criminal Rule 29 motion for judgment of acquittal at trial.*

Crawford argues that his trial counsel was ineffective for failing to make a motion for judgment of acquittal under Idaho Criminal Rule 29 ("I.C.R. 29"), both before and after the jury returned its verdict.

In *State v. Kraft*, this Court held that the appellant's "allegations of incompetence fall within that area of the advocate's role which is characterized as 'trial tactics' or 'strategy choice.'" *State v. Kraft*, 96 Idaho 901, 905, 539 P.2d 254, 258 (1975). One of the allegations to which this Court was referring was appellant's contention that his counsel was ineffective for "failure to move for a dismissal of charges against him after the state presented its case." *Id.* The allegation discussed in *Kraft* did not reference I.C.R. 29 specifically because I.C.R. 29 was not adopted until 1980. *See* I.C.R. 29. Yet, I.C.R. 29 is the equivalent of what this Court was discussing in *Kraft*, and thus that a decision of whether to bring an I.C.R. 29 motion for acquittal is a strategic or tactical decision.

In this case, Crawford has not presented any argument sufficient to establish that counsel's failure to bring an I.C.R. 29 motion was anything other than a strategic or tactical decision; therefore, examining the sufficiency of the evidence to withstand an I.C.R. 29 motion is unnecessary. Nevertheless, both the general rule and the sufficiency of the evidence to overcome an I.C.R. 29 motion will be discussed in turn.

"[S]trategic decisions are 'virtually unchallengeable' if made after a 'thorough investigation of the law and facts relevant to plausible options . . . .'" *Dunlap*, 155 Idaho at 384, 313 P.3d at 40 (quoting *Strickland*, 466 U.S. at 689). "Decisions 'made after less than complete investigation' are still reasonable to the extent 'that reasonable professional judgments support the limitations on investigation.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). Therefore, tactical or strategic decisions of trial counsel will not be questioned by this Court unless they "are made upon the basis of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *Kraft*, 96 Idaho at 905, 539 P.2d at 258.

Crawford has not established that his trial counsel's failure to make an I.C.R. 29 motion for acquittal was made upon the basis of inadequate preparation, ignorance of the relevant law,

or any other shortcoming capable of objective evaluation. Crawford's briefing argues only that the failure to make an I.C.R. 29 motion was ineffective assistance of counsel because there was insufficient evidence in the record upon which to convict him of Count II. He argues extensively why there was insufficient evidence, but never discusses any objective measure by which his counsel's decision not to raise an I.C.R. 29 argument was deficient. Perhaps his counsel considered it and concluded that such a motion would be unsuccessful and a waste of time that could distract the jury with further sequestration while the motion was litigated; perhaps counsel was unprepared and simply neglected to make the motion. It was Crawford's burden to show the latter,[2] and in the absence of such a showing, this Court presumes the former: that the decision was one driven by tactical or strategic decision making. Therefore, Crawford has not established ineffective assistance of counsel based upon the failure to make an I.C.R. 29 motion for acquittal.

While the failure to raise an I.C.R. 29 motion was a strategic decision, a substantive analysis of the merits of such a motion follows. An I.C.R. 29 motion would have failed because there is sufficient evidence in the record from which a reasonable jury could have convicted Crawford of Count II, and therefore his counsel was not inadequate for failing to make that motion at trial.

When analyzing a failure of trial counsel to make a motion that is neither strategic nor tactical,[3] this Court examines the probability of success of the motion in question. *Estrada v. State*, 143 Idaho 558, 561, 149 P.3d 833, 836 (2006). If the motion would not have succeeded, then a failure to bring the motion cannot satisfy either prong of the *Strickland* analysis. *See id.*; *see also Boman v. State*, 129 Idaho 520, 526, 927 P.2d 910, 916 (Ct. App. 1996).

Under I.C.R. 29, a district court may enter an acquittal on behalf of the defendant, either before the case has been submitted to the jury or after a jury has returned a verdict of guilty, when the evidence in the record is insufficient to sustain a conviction. *State v. Eliasen*, 158 Idaho 542, 545, 348 P.3d 157, 160 (2015).

---

[2] *See, e.g.*, *State v. Adair*, 99 Idaho 703, 708, 587 P.2d 1238, 1243 (1978) ("On this record, the assignment of error lacks merit, because it has not been established that failure to give an accomplice corroborative requested instruction resulted from inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." (quotation omitted)).

[3] In *Estrada v. State*, this Court reviewed the failure to make a motion to suppress evidence, noting that the standard was different from reviewing a tactical or strategic decision, thereby indicating that a motion to suppress is not a tactical or strategic decision. 143 Idaho 558, 561, 149 P.3d 833, 836 (2006).

Appellate review of the sufficiency of the evidence is limited in scope. *Id.* "The relevant inquiry is not whether this Court would find the defendant guilty beyond a reasonable doubt, but whether 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* at 546, 348 P.3d at 161 (quoting *State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2012)). So when this Court reviews a motion under I.C.R. 29, "'the only inquiry for this Court is whether there is substantial evidence upon which a reasonable jury could have found that the State met its burden of proving the essential elements' of the charged crimes 'beyond a reasonable doubt.'" *Id.* (quoting *Adamcik*, 152 Idaho at 460, 272 P.3d at 432). A district court's denial of an I.C.R. 29 motion should be affirmed if there is substantial evidence in the record to sustain the conviction. *See id.* Evidence is substantial if a reasonable trier of fact would accept it and rely upon it in determining whether a disputed point of fact has been proven. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009). "In conducting its analysis, 'the Court is required to consider the evidence in the light most favorable to the State,' but will not substitute its 'judgment for that of the jury on issues of witness credibility, weight of the evidence, or reasonable inferences to be drawn from the evidence.'" *Eliasen*, 158 Idaho at 546, 348 P.3d at 161 (quoting *Adamcik*, 152 Idaho at 460, 272 P.3d at 432).

Crawford has not shown that a reasonable jury had insufficient evidence upon which to convict him of Count II. Count II alleged lewd conduct with a minor child under the age of sixteen; specifically, it alleged that Crawford committed lewd conduct with Victim II in the Kitchen Incident. Lewd conduct with a minor is prohibited by Idaho Code section 18-1508, which provides that people may not commit "any lewd or lascivious act or acts upon or with the body or any part or member thereof" of a minor child, "including but not limited to . . . manual-genital contact . . . when any of such acts are done with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person, such minor child, or third party . . . ." I.C. § 18-1508. Crawford asserts that the evidence indicating he is guilty of Count II, Victim II's testimony, is insufficient to prove manual-genital contact in the Kitchen Incident. He argues that there are two instances of testimony that could possibly prove manual-genital contact, but that neither does: (1) he argues that Victim II's testimony that Crawford was "up there to [her] privates" does not apply to the Kitchen Incident and thus cannot prove it; (2) he argues that

Victim II's testimony that Crawford touched "outside of [her] vaginal area" during the Kitchen Incident could not reasonably be interpreted to constitute manual-genital contact.

When viewing all evidence in the State's favor while not invading the jury's province to assess credibility, Victim II's testimony that Crawford's hand was "up there [to] her privates" could reasonably be interpreted as applying to the Kitchen Incident. Crawford argues that it applies only to her general testimony about times Crawford made her uncomfortable, and specifically does not apply to the Kitchen Incident. The testimony about touching Victim II's privates occurred immediately following a discussion of Crawford touching Victim II's leg. It is accurate that it was not expressly in reference to the Kitchen Incident, however the next question that was asked moved the conversation specifically to the Kitchen Incident, and Victim II testified that Crawford touched her thigh and moved upwards. It is not unreasonable to conclude that these pieces of testimony were related.

This Court is precluded from substituting its judgment in place of the jury's regarding "reasonable inferences to be drawn from the evidence." *State v. Allen*, 129 Idaho 556, 558, 929 P.2d 118, 120 (1996). Crawford's interpretation of Victim II's testimony may be reasonable, but he has failed to show that the alternative interpretation, and indeed the one adopted by the jury, is unreasonable. Crawford's argument that Victim II's testimony regarding Crawford being "up there to [her] privates" could not reasonably be interpreted as referring to the Kitchen Incident is unavailing. Therefore, an I.C.R. 29 motion would not have succeeded and the failure to raise such a motion did not constitute ineffective assistance of counsel.

Next, Crawford argues that Victim II's testimony that Crawford touched "outside of [her] vaginal area" could not reasonably be interpreted to constitute manual-genital contact. This argument, too, is unavailing. The phrase "outside of my vaginal area" is an ambiguous phrase, susceptible of more than one reasonable interpretation. It may, as Crawford argues, mean that Crawford did not contact her genitalia, whether inside or outside of her clothing. However, the testimony may also be interpreted as Crawford having touched her external genitalia near her internal genitalia, whether inside or outside her clothing.[4] "To constitute lewd and lascivious conduct, it is not necessary that bare skin be touched. The touching may be through the clothing." ICJI 930. *See also* <u>*State v. Madrid*</u>, 74 Idaho 200, 206, 259 P.2d 1044, 1047 (1953),

---

[4] Female external genitalia consist of the clitoris, the mons pubis, the labia minora and labia majora, and the vestibule of the vagina. DORAND'S ILLUSTRATED MEDICAL DICTIONARY 1106, 1247 (24th ed. 1965). Female internal genitalia are commonly understood to refer to the internal sex organs such as the vagina, cervix, and uterus.

*abrogated on other grounds by State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978) ("The naked body of the victim need not be touched to constitute [the crime of lewd conduct with a minor or child under sixteen.]").

As previously noted, when reviewing the sufficiency of the evidence, this Court is "required to consider the evidence in the light most favorable to the State." *Adamcik*, 152 Idaho at 445, 272 P.3d at 432. This means that when reviewing ambiguous testimony on appeal, we resolve the ambiguity in a fashion that supports the judgment below. Crawford would have this Court resolve the ambiguity in his favor; we are not free to do so. Therefore, an I.C.R. 29 motion would not likely have succeeded and the failure to raise such a motion was not ineffective assistance of counsel.

However, we wish to caution prosecutors about the need to create an adequate record for appellate review. Although it is typically the "appellant's burden to establish a record and to preserve it on appeal to substantiate his or her contentions before the appellate court," *State v. Clark*, 124 Idaho 308, 315, 859 P.2d 344, 351 (Ct. App. 1993), it likewise incumbent upon the State to create a record sufficient to demonstrate the existence of "substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt." *State v. Sheahan,* 139 Idaho 267, 285, 77 P.3d 956, 974 (2003). In this case, we understand that the limited testimony as to the precise location of the contact may well have been the product of prosecutorial sensitivity to the fact that Victim II was a sixteen year-old child who had testified that she was nervous about being in the courtroom, and that it was difficult to be there. However, a prosecutor should take care to avoid solicitude for the feelings of a vulnerable witness resulting in an insufficient record. Certainly, for appellate purposes, when an alleged victim of lewd conduct does not testify in relatively explicit clinical terms, e.g., vagina, it would assist reviewing courts if the record contained an exhibit or exhibits reflecting the location of alleged sexual contact.

When the "outside of [her] vaginal area" evidence is considered alongside the "up there to [her] privates" evidence, both in the light most favorable to the State, a reasonable jury could have concluded that Crawford engaged in manual-genital contact with Victim II. Therefore, an I.C.R. 29 motion at trial would likely not have been successful and the failure to raise one was not ineffective assistance of counsel.

11

2.    *Crawford has not established that his counsel was ineffective for failing to request that the district court either instruct the jury that manual-genital contact requires touching the "vaginal area" or define the term "genital."*

Crawford argues that the first part of the jury's Question Number 3 ("In order to have committed manual-genital contact, does it require touching the vaginal area?") should have been answered affirmatively. He asserts that his counsel's failure to so request constituted ineffective assistance of counsel. The State argues that Jury Question Number 3 did not relate to Count II, and therefore that any error with respect to answering it—and consequently any related deficiency in legal performance—is harmless. Crawford responds that the fact that the jury also asked about touching the breast area, conduct not alleged in Count II, does not preclude the first part of the question from being related to Count II. Crawford is correct in this argument. The jury did not specify upon which counts its question was based. Further, the district court instructed the jury that "[y]ou may not follow some [instructions] and ignore others." To apply an answer to the question "In order to have committed manual-genital contact, does it require touching the vaginal area?" to Counts I, III, or IV but not to Count II would be to ignore the answer for that one particular count. This is not a logical conclusion. Therefore, the jury's Question Number 3 did apply to Count II and should be analyzed as such.

It was not error for the district court to decline to answer the jury's question and to define "genital," and therefore, the failure to request it was not ineffective assistance of counsel. A claim for ineffective assistance of counsel requires showing both that counsel's performance was deficient and that the deficiency prejudiced the defendant. *Aragon v. State*, 114 Idaho 758, 761, 760 P.2d 1174, 1177 (1988). Crawford argues that his counsel's performance was deficient and this deficiency prejudiced him because, had the court answered as he requested, he would have been found not guilty. Furthermore, he argues that even had the court denied counsel's request, the issue would have been preserved on appeal.

Defense counsel's failure to object to a reversible jury instruction is objectively deficient performance sufficient to meet the first prong of the *Strickland* inquiry. *See McKay v. State*, 148 Idaho 567, 571, 225 P.3d 700, 704 (2010). Further, when a jury instruction constitutes reversible error, then the failure to object to it could be prejudicial to a defendant. Conversely, if the jury instruction was not reversible error, then failure to object to it cannot have prejudiced the defendant because the lack of reversible error means the jury was not confused or misled by the instruction, and therefore there is no likelihood of a different result at trial had the instruction not

12

been given. Therefore, both the deficient performance and prejudice prongs of the *Strickland* analysis turn on whether the instructions as given were reversible error.

"When the instructions, taken as a whole, do not mislead or prejudice a party, even an erroneous instruction does not constitute reversible error." *Chapman v. Chapman*, 147 Idaho 756, 759, 215 P.3d 476, 479 (2009) (quoting *Bailey v. Sanford*, 139 Idaho 744, 753, 86 P.3d 458, 467 (2004)). If, as a whole, the instructions given to a jury adequately, correctly, and completely cover the relevant law, then whether to give additional instructions in response to a question from the jury is within the sound discretion of the trial court. *State v. Sheahan*, 139 Idaho 267, 282, 77 P.3d 956, 971 (2003). Conversely, if a question from a jury reveals a defect, ambiguity, or gap in the instructions as to a point of law, then the trial court has a duty to make such instructions as necessary to alleviate the confusion or cure the defect. *Id.*

The instructions provided to the jury in this case were correct and adequate;[5] therefore, it was not an abuse of discretion for the district court to decline to answer whether manual-genital contact requires touching the vaginal area or to define "genital." "Ordinarily the language employed by the legislature in defining a crime is deemed to be best suited for that purpose . . . ." *McKay*, 148 Idaho at 570–71, 225 P.3d at 703–04 (quoting *State v. Zichko*, 129 Idaho 259, 264, 923 P.2d 966, 971 (1996)). As discussed at length by the district court, "manual-genital" contact (as the statute requires) is not synonymous with manual-vaginal-area contact.[6] To instruct the jury otherwise would have been to substitute the district court's opinion about what language should be in the statute for the actual language chosen by the legislature which is presumed to be correct. Further, "[t]erms which are of common usage and are sufficiently generally understood need not be further defined when instructing the jury." *State v. Draper*, 151 Idaho 576, 589, 261 P.3d 853, 866 (2011) (quoting *Zichko*, 129 Idaho at 264, 923 P.2d at 971).

Crawford makes no argument that the term "genital" is not a generally understood term. In fact, Crawford points out that words should be given their plain, usual, and ordinary meaning, but then reverses course in the next sentence and advocates that the term "manual-genital" contact should be replaced with something akin to "manual-vaginal-area contact" because "vaginal area" has been used synonymously with "genitals" three times by this Court, and three

---

[5] The district court instructed the jury consistently with this Court's recommended instructions.

[6] The external genitalia are outside the vaginal area. Outside is defined as the outer side of a surface. *See* Oxford American Paperback Dictionary 1027 (1980). A jury could reasonably understand her testimony to be referencing the external genitalia (or outside the vaginal area) which is what is required under the statute for a conviction.

13

times by the Court of Appeals in the past. However, this does not indicate why the district court should have deviated from the precise words chosen by the legislature. Therefore, Crawford has not provided a reason as to why it was an abuse of discretion for the district court not to further clarify the definition of "genital."

Crawford suggests that the jury's Question Number 3 "showed that it was confused on a point of law, *i.e.*, what constituted manual-genital contact," and therefore the district court had a duty to clarify. He makes no argument as to why the definition "manual-genital" is a point of law rather than one of fact which the jury is trusted to use its common knowledge and experience to determine. It does not appear, and no party points to any legal authority indicating, that the term "genital" has a specific legal definition. Rather, it is a term within the general understanding of the jury. Therefore, whether to tell the jury that "manual-genital contact" meant touching the "vaginal area" or to define the term "genital" was squarely within the district court's discretion and the refusal to do so was not an abuse of that discretion.

Because the jury instructions as a whole did not confuse or mislead the jury or prejudice Crawford sufficiently to warrant reversal, the failure to object to the instructions or to give different instructions was not deficient performance, nor did it prejudice Crawford. Therefore he has failed to establish ineffective assistance of counsel based on that failure.

> 3.      *Crawford has not established that his counsel was ineffective on appeal for failing to raise the argument of insufficient evidence to sustain his conviction.*

Crawford argues that his appellate counsel was ineffective for failing to raise a claim regarding the sufficiency of the evidence against him during his direct appeal. His arguments regarding the ineffectiveness of his appellate counsel are all precisely the same as those he makes regarding the inadequacy of his trial counsel to make an I.C.R. 29 motion for acquittal.

"A criminal defendant has a constitutional right to the effective assistance of counsel on the first appeal as of right." *Row v. State*, 135 Idaho 573, 579, 21 P.3d 895, 901 (2001). The effectiveness of appellate counsel is reviewed under the same standard as trial counsel. *Dunlap v. State*, 159 Idaho 280, ___, 360 P.3d 289, 305 (2015) ("We use the same test to evaluate ineffective assistance of appellate counsel on direct appeal as we use to evaluate ineffective assistance of trial counsel.").

Appellate counsel is not required to raise every issue available to the defendant. *Aragon v. State*, 114 Idaho 758, 765, 760 P.2d 1174, 1181 (1988). This Court has recognized the United States Supreme Court precedent "that appellate counsel does not have a constitutional duty to

14

raise every non-frivolous issue requested by defendant." *Id.* (citing *Engle v. Isaac*, 456 U.S. 107, 133 (1982)). Rather, "[t]o demonstrate deficient performance of appellate counsel for failure to raise a claim on appeal, the defendant must show that counsel made an objectively unreasonable decision to omit the claim." *Dunlap*, 159 Idaho at ___, 360 P.3d at 305. Accordingly, appellate counsel is not deficient merely for omitting an argument as "the weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy." *Id.* (citing *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir.1989)). "When reviewing appellate counsel's performance, we determine whether, but for appellate counsel's errors, a reasonable probability exists that the defendant would have prevailed on appeal." *Id.*

In this case, Crawford has failed to establish that, but for his appellate counsel's failure to raise a claim of insufficient evidence, he would have prevailed on his direct appeal. An appellate claim for insufficient evidence to sustain a conviction for Count II would have likely failed on appeal. This is based upon the same reasoning that the claim would have failed at the trial level. As discussed above, Crawford has not sufficiently shown that a reasonable jury had insufficient evidence upon which to convict him of Count II. Accordingly, Crawford has failed to establish ineffective assistance of counsel during his direct appeal.

## VI. CONCLUSION

Because the district court did not err in concluding that Crawford failed to establish ineffective assistance of counsel at either the trial stage or the appellate stage, this Court hereby affirms the summary dismissal of Crawford's petition for post-conviction relief.

Chief Justice J. JONES and Justices EISMANN, BURDICK AND HORTON CONCUR.

15